Filed Jan. 11, 1894.

---

No. 1,025.

## Ross v. The State.

Criminal Law.—*Affidavit.*—*Jurat, Omission of Date in.*—*Effect.*—*Clerical Error.*—*Amendment of Pleading.*—*Presumption.*—Where, in the jurat to an affidavit, made before a police judge, the year in which the same was subscribed and sworn to is given as "189—," such omission was clearly a clerical error, which the judge might have corrected any time during the trial; and, on appeal, such amendment will be deemed to have been made. However, the jurat would not be invalid if no date whatever was written in it, as the officer's act is sufficiently authenticated by his certificate of the performance of the same.

Same.—*Sabbath-Breaking.*—*Statute Construed.*—*"Usual Avocation" Defined.*—*Sufficiency of Affidavit.*—The phrase "usual avocation," as used in the statute creating the crime of Sabbath-breaking, section 2000, R. S. 1881, is, by the manifest intention of the Legislature, equivalent to the term "vocation," and an affidavit is sufficient which follows the language of the statute in that respect.

Same.—*Evidence.*—*Permitting to be Introduced After Close of Evidence and After Argument.*—In a criminal action for Sabbath-breaking, it was not error for the court, after the evidence was closed and the argument made, to permit the State to introduce evidence of the fact that the defendant was a person over fourteen years of age, such fact being but a technical point of proof, opportunity being given the defendant to introduce proof on such point.

Statutory Construction.—*Intention of Legislature Rather than Strict Letter of Statute.*—Courts are not bound to adopt such a construction of a statute as would lead to manifest absurdity, in order that the

strict letter of the statute may be adhered to; but they will rather look to the intention of the Legislature, as gathered from the import of the whole act, and will carry out such intention, as thus obtained.

EVIDENCE.—*Personal Knowledge of Witness.*—*Presumption.*—Where a party testifies to a fact, the presumption is that he testifies from personal knowledge; and, if the adverse party thinks otherwise, he is entitled to interrogate such witness on cross-examination, and if it should then appear that the witness testified without any knowledge upon the subject, the testimony should be rejected or striken out.

From the Marion Criminal Court.

*P. Norton,* for appellant.

*A. G. Smith,* Attorney-General, *F. W. Cady* and *D. L. Cady,* for State.

REINHARD, J.—The appellant was charged, by affidavit, in the police court of the city of Indianapolis, with the offense of following his usual avocation on Sunday. Upon conviction, he appealed to the Criminal Court of Marion county, where he was again tried and convicted.

The criminal court overruled a motion to quash the affidavit. For this supposed error, the appellant asks us to reverse the judgment.

One of the alleged defects in the affidavit consists in the fact that in the jurat the year in which the same was subscribed and sworn to is given as 189—. It is apparent that this was a mere clerical omission. The police judge before whom the affidavit was made might properly have amended the jurat by supplying the omitted figure at any time before or during the time of trial. We see no reason why the amendment may not be deemed to have been made.

The affidavit, taken as a whole, together with the certificate of the city clerk as to the time of the filing of the same, shows that the year intended to be written was

that of 1893.    Besides, we do not think the jurat would
be invalid if no date whatever had been written in it.
The officer's act is authenticated by his certificate of the
performance of the same.    The certificate is not invalid
for the want of a date, although both convenience and
good practice may require that it be dated.

It is further insisted that the affidavit fails to show the
commission of any public offense.

The affidavit charges that the appellant, with another,
on the 19th day of March, 1893, at the city of Indian-
apolis, county of Marion, and State of Indiana, "was"
then and there found unlawfully at common labor, and
engaged in his usual avocation, to wit, then and there
giving special shows and performances in the Empire
Theater, at the price of ten, thirty, and fifty cents."
Then follow the negative averments necessary under the
exceptions contained in the statute.

We see no reason, and none has been pointed out, why
the acts charged here may not constitute the offense de-
fined in the statute.    If the acts of "giving shows and
performances in the Empire Theater" were part of the
"usual avocation" of the appellant, they certainly come
within the letter of the law, and the offense being
charged in the language of the statute is all that is re-
quired.

Both by the ruling of the court upon the motion to
quash, and the overruling of the motion for a new trial,
the appellant insists that such error was committed as
should reverse the judgment.

The remaining objection to the sufficiency of the af-
fidavit applies, also, to the sufficiency of the evidence,
and we shall consider both together.

It is the contention of the appellant's counsel, that as
the statute makes unlawful only the following of one's
usual "avocation" on Sunday, and not the pursuit of

his vocation, or occupation, the acts charged, even if proved, do not constitute an offense under such statute.

In this view of counsel, we are unable to concur. It may be true that the draftsman of the bill was somewhat unfortunate in the choice of language by the employment of the word "avocation," for vocation. The primary meaning of the word "avocation" is a calling away, a diversion, which, of course, is the very opposite of vocation, or occupation. Good writers do not use the word (in the singular number) in the sense in which it is evidently employed in the statute. When used in the plural form, however, it means vocation, occupation, usual employment. Webster's International Dic., title Avocation.

It will be noted that both the statute and the affidavit use the words "usual avocation." To engage in one's "usual avocation" is what is made unlawful. A *"usual* avocation" can not mean a calling aside, a diversion. That which is usual is habitual, common, customary, not special or unusual. As "avocations" may become a vocation, so we think one's "usual avocation" may become his vocation. If it was the intention of the Legislature to punish only those persons who, on Sunday, engage in some "avocation," *i. e.*, in some calling away, or diversion, some act out of the line of their usual business, or occupation, we must say that the object of the law was not only a very absurd, but also an extremely unjust, one. But we are not required to hold that such was the legislative intent. We can not be led to believe that instead of punishing a person for following his usual every-day employment on Sunday, it was the design of this law to punish him for *not* pursuing his customary vocation, as for turning away from the same for rest or recreation.

Courts are not bound to adopt a construction that

would lead to such manifest absurdity, in order that the strict letter of the statute may be adhered to. They will rather look to the intention of the Legislature, as gathered from the import of the whole act, and will carry out such intention as thus obtained. *Mayor, etc.,* v. *Weems,* 5 Ind. 547; *Stout* v. *Board, etc.,* 107 Ind. 343; *Storms* v. *Stevens,* 104 Ind. 46.

As said by an Indiana law writer: "Though penal laws are to receive a strict construction, they are not to be construed so strictly as to defeat the obvious or expressed intent of the Legislature." Gillett's Crim. Law, section 20.

It is true, as appellant contends, that a statutory enactment, upon the subject of construction, provides that words and phrases shall be taken in their plain or ordinary and usual sense. R. S. 1894, section 240.

And it is further true that this meaning or sense is usually obtained from works on philology, or standard dictionaries. But this statute, itself, makes an exception to the rule laid down, by declaring, in the outset, that this rule shall not be applicable when "such construction would be plainly repugnant to the intent of the Legislature, or of the context of the same statute."

And so, if we should grant that the use of the word "avocation" in the statute under construction, even in connection with the qualifying word "usual," is not authorized by lexicographers or good writers, in the sense in which it is sought to be interpreted by the State, we should still be compelled to give it that meaning if we found from the context and entire scope of the act, that this was the sense in which the Legislature had employed it.

By an examination of the enactment, we find that the things forbidden and punished by it, when done on Sunday, are rioting, hunting, fishing, quarreling, and

being at common labor, and being engaged in one's "usual avocation." An exception is made in cases of works of necessity and charity, and also in favor of those who conscientiously observe the seventh day of the week as the Sabbath, travelers, families removing, keepers of toll bridges and toll gates, and ferrymen, acting as such. These provisions clearly and unmistakably indicate that the act denounced by the statute is Sabbath-breaking, and that it could not have been intended to prohibit the doing of such things as might come under the primary or literal signification of the word avocation. As before stated, such an interpretation would be both unjust and highly absurd.

It is doubtless true that a person may engage in his everyday calling or work and yet not be subject to the penalties of this statute. Cases of this kind, however, come within the exceptions of the enactment, and whether an act done on Sunday is within such exceptions will depend upon the peculiar circumstances of each case. Thus it could readily be determined that a minister of the gospel who serves his congregation on Sunday, though engaged in his usual calling, is not violating this statute, as such work clearly comes within the exception as to works of charity, and even without the exception, a construction holding such a person guilty would be manifestly repugnant to the spirit of the law. There may be acts done on Sunday, however, in the pursuit of one's usual occupation or calling, where the question is not so free from doubt, but we do not think the present case is such a one.

Our conclusion upon this point is that the affidavit charges a public offense, and that the evidence respecting the character of the acts done is sufficient to warrant a conviction, if it was shown also that the acts relied upon, as making out the offense, were done by the ap-

pellant in the pursuit of his usual occupation or calling.

It is further contended, however, that the evidence falls far short of establishing the charge in the particular last mentioned. It is not claimed, on behalf of appellant, that the acts complained of were acts of charity or necessity, or that the appellant habitually observed the seventh day of the week as the Sabbath. We also think there is evidence tending to show that such acts were portions of the usual and everyday occupation of the appellant. This is shown by evidence of admission of the appellant made to witnesses, and by the bills advertising the performances, one of which was introduced in evidence, and incorporated into the bill of exceptions. The evidence tends to sustain the finding.

Sometime after the evidence was closed and the argument made, the court permitted the State to introduce evidence of the fact that the appellant was a person of over fourteen years of age. There was no error in this. It was but a technical point of proof, and the court did not abuse its discretion by allowing it to be made out of its order. Besides, the court informed the appellant that it would also permit him to introduce testimony upon the subject, if he desired to do so. If the appellant desired to procure such testimony, he should have asked for a postponement of the case if necessary to obtain his evidence in rebuttal. He has not shown himself injured by the adverse ruling.

The court, over appellant's objection and exception, permitted a witness to testify that the appellant was a person over fourteen years of age. The ground of objection was that the witness had not shown himself to be possessed of any knowledge upon that subject. This was a matter for cross-examination. When a witness testifies to a fact, the presumption is that he gives such testimony from personal knowledge. If the adverse party thinks

otherwise, he is entitled to interrogate such witness upon cross-examination, and if it should then appear that the witness testified without any knowledge upon the subject, the testimony would ordinarily be rejected, or stricken out.    There was no error in this ruling.

This covers all the questions discussed by counsel. and we have not been able to find any available error.

Judgment affirmed.

