Woods v. The State.

Filed March 14, 1893.

———— ◆ ————

No. 16,134.

Woods v. The State.

| 134 | 35 |
| 136 | 555 |
| 134 | 35 |
| 142 | 232 |
| 134 | 35 |
| 149 | 398 |
| 149 | 703 |
| 134 | 35 |
| 171 | 376 |

CRIMINAL LAW.—*Petit Jury.*—*Incompetency of Juryman.*—*Opinion Based on Affidavit of Witness.*—In a criminal action, the opinion of a proposed juror, based upon an affidavit, or what purports to be an affidavit, of a witness to the transaction and acts constituting the alleged crime, renders the proposed juror incompetent; such opinion, if not within the letter, is within the reason of the statute making certain opinions a disqualification to serve as a juror in a criminal action.

Woods *v.* The State.

JURY.—*Challenges Peremptorily and for Cause.*—*Challenge for Cause Overruled.*—*When Erroneous.*—Where a number of proposed jurymen are challenged for cause, but the court overruled the challenges, and several of the same jurymen are challenged peremptorily by the same party, having exhausted all the peremptory challenges to which he was entitled but one, if any number of these persons offered as jurymen and challenged peremptorily, or challenged for cause and yet served as jurymen, are incompetent, it will constitute material error.

From the Wayne Circuit Court.

*H. C. Fox* and *J. F. Robbins,* for appellant.

*H. C. Starr* and *R. A. Jackson,* for appellee.

McCABE, J.—The appellant was indicted in the circuit court for murder in the second degree. There was a trial by jury, and a verdict of guilty of voluntary manslaughter, assessing appellant's punishment at twenty-one years' imprisonment in the State prison. Having overruled appellant's motion for a new trial, the court rendered judgment on the verdict.

The fourth assignment of error here, namely, that the court erred in overruling appellant's motion for a new trial, is the only one argued in appellant's brief; indeed, the other errors assigned are embraced in this one. It is assigned as one of the grounds for a new trial that the trial court overruled appellant's challenge of several jurors for cause.

One James Hannon testified as a witness on behalf of the State. Both the witness Hannon and the deceased Blount were inmates of the Eastern Hospital for the Insane, situate in the county of Wayne. Appellant was an employee there as an attendant. Hannon claims to have been an eye witness to the whole transaction resulting in the death of Blount; as such witness, he gives a detailed account on the trial of all the facts and circumstances, some of which are horrifying. These same facts he had, previous to the trial and soon after the death of Blount,

Woods *v.* The State.

stated in an affidavit subscribed and sworn to by him before the clerk of the Delaware Circuit Court, in which he had made a fuller statement as an eye witness of all the facts, and alleged more revolting acts of appellant than he testified to on the trial. This affidavit was published broadcast in the daily and weekly newspapers at the time, accompanied with attractive headlines and bitter denunciations of the deed as a foul murder. Many of the jurors that tried the case had read this affidavit in newspapers, and the comments accompanying the same, before they were called as jurors in the case. Abner Bond, David Haisley, Vernon Cheesman, John Elliott, Edward Timberlake, William S. Hatfield, and Allen Roller were called as jurors, and testified on their *voir dire* that they had each read Hannon's affidavit before mentioned, and had formed an opinion thereon as to the guilt or innocence of the appellant. All of them, however, stated that they thought their opinion would yield readily to the evidence, and that they each thought they could fairly and impartially hear the evidence, try the case, and a true verdict render according to the law and the evidence; yet many of them testified that the opinion they had thus formed was so firmly fixed that evidence would be required to remove such opinion, and that they were not as free to hear and decide as if they had not formed such opinion.

Four of these jurors, namely, Elliott, Timberlake, Hatfield, and Roller, were peremptorily challenged by appellant after his challenge of them for cause had been overruled; the peremptory challenge was sustained, and the four jurors last named did not serve; the others did serve in the case.

It appears, also, in the record, that when the jury were sworn to try the cause, appellant had exhausted all the peremptory challenges to which he was entitled under the

statute, but one. This being true, if any number of these jurors above one were incompetent, either those finally challenged peremptorily, or those that were challenged for cause only and yet served, it will constitute material error.

Our criminal code of 1881 contains a new provision, one never before found in the criminal code of this State, touching the qualification of jurors in criminal cases. The third subdivision of section 1793 reads thus: "But if a person called as a juror state that he has formed or expressed an opinion as to the guilt or innocence of the defendant, the court or parties shall thereupon proceed to examine such juror on oath as to the ground of such opinion; and if it appear to have been founded upon reading newspaper statements, communications, comments, or reports, or upon rumors or hearsay, and not upon conversations with witnesses of the transaction, or reading reports of their testimony, or hearing them testify; and the juror state on oath that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and evidence, the court, if satisfied that he is impartial and will render such verdict, may, in its discretion, admit him as competent to serve in such case."

We are referred to *Guetig* v. *State*, 66 Ind. 94, as sustaining the ruling of the trial court in overruling the challenge of these jurors for cause. That case might be sufficient to sustain the ruling, but it was decided under the criminal code of 1852, containing no such provision as the one above quoted. That statute read as follows: "When the jurors are called, each may be examined on oath by either party, whether he has formed or expressed an opinion of the guilt or innocence of the defendant, and upon such examination and other questions put by leave, the court may determine upon the competency of

the juror. Any juror is incompetent who has formed or expressed an opinion of the guilt or innocence of the defendant." 2 R. S. 1876, p. 393. This provision only differed from that of 1831, 1838 and 1843, in the addition of the last sentence, declaring a juror incompetent who had formed or expressed an opinion of the guilt or innocence of the defendant. The former statutes unquestionably placed the whole matter of the competency of a juror who had formed or expressed an opinion as to the guilt or innocence of the accused, wholly within the discretionary power of the trial court; and whether the act of 1852, above quoted, was intended to change that rule or not, it is now too late to inquire. It is sufficient to say that this court construed the act of 1852 precisely as it had the previous acts, though it contained very important and significant language not found in the former statutes. This was the condition of the law at the time the criminal code of 1881 was adopted. It will be seen, by its language, that the criminal code of 1881 has set forth in substance the same rule for determining the competency of a juror, as this court had adopted by its construction of the former statutes upon the subject, with one important exception, namely: If his opinion was "founded upon conversations with witnesses of the transaction, or reading reports of their testimony, or hearing them testify." In such a case the discretionary power of the trial court to determine such juror's competency, notwithstanding such opinion, is entirely taken away; and in case of opinions based on any other matters, the discretionary power of the trial court is left precisely as it was before.

Let us inquire, then, what was the evil this new provision was intended to remedy? It unquestionably was the evil of permitting, in any criminal case, a juror to serve who had formed an opinion as to the guilt or in-

nocence of an accused, founded upon the statements of the transaction constituting the crime by one who witnessed the same.    In *Guetig* v. *State, supra,* a juror who had formed an opinion upon reading the testimony of witnesses to the transaction constituting. the crime, was held competent over proper objection, notwithstanding the juror stated that the opinion was so firmly fixed in his mind that it would require some evidence to remove it, and that he would not feel quite so free to try the case impartially and fairly as if he had not heard of it.    The judgment pronouncing the death sentence was affirmed by this court, which was fully justified by the rule then established under the statute as it then was.    It may be that that death of a human being was just, but it would have looked better for the administration of justice to have had the punishment of death assessed by a jury every man of which went into the jury-box free from any opinion as to the guilt of the accused, founded upon reading the testimony of witnesses to the transaction. Such was the evil sought to be remedied by the new provision in question.

It is conceded on both sides that this court correctly construed the statute in question in *Dugle* v. *State*, 100 Ind. 259, where it is said: "But we have never gone to the extent of holding that it is within the discretion of a *nisi prius* court to admit a person, over proper .objection, to serve as a juror in a criminal cause, when he has either formed or expressed such an opinion from having heard witnesses testify in a preceding trial of the same cause, or from having read reports of the testimony of, or having had conversations with, witnesses to the transaction."

But it is contended, with much learning and research on behalf of the State, that the challenged jurors were not disqualified under that statute, because their opinions

were not based "upon conversations with witnesses of the transaction, or upon reading reports of their testimony, or hearing them testify," according to the strict letter of the statute, and that it must be construed by a strict adherence to its letter. While appellant's counsel contend, with equal earnestness, skill, and ability, that the true spirit and intent of the statute require a construction extending its scope beyond its strict letter, and so as to include the challenged jurors in this case.

The able briefs of counsel on both sides, and the admirable skill of the reporter and clerk in the preparation of the voluminous mass of record have been of great assistance to us, and we are made thereby to feel all the safer to proceed to the determination of the questions involved.

"In the construction of statutes, where the meaning is doubtful and uncertain, the courts may look to the situation and circumstances under which the same were enacted; other statutes bearing upon the same subject, whether passed before or after, and whether in force or not, as well as the history * * and general condition of the country." *Stout* v. *Board, etc.,* 107 Ind. 343; *May, Exec.,* v. *Hoover,* 112 Ind. 455; *Hunt* v. *Lake Shore, etc., R. W. Co.,* 112 Ind. 69.

Counsel for appellee have cited a large number of decisions of this court holding that the word "testimony" has reference to, and means, that class of evidence that is delivered by a witness before a judicial tribunal, as contradistinguished from all that class of evidence not so delivered; and hence they contend that the Legislature "intended to restrict the statute in question to *viva voce* statements of witnesses before a judicial tribunal," and therefore that it does not disqualify the challenged jurors, because their opinions were not founded on reading reports of Hannon's testimony, but on reading his affidavit

as a witness to the transaction. · The first case cited in support of this contention, *McDonald* v. *Elfes, Admr.*, 61 Ind. 279, does not support it very well, because it says: ''Testimony is the statement or declaration of a witness; it is merely a species or class of 'evidence.' '' While it may be true that the word ''testimony'' means the statement of a witness under oath, yet it does not necessarily mean that it is delivered to a judicial tribunal, as appellee's counsel contend. A deposition may, and often does, contain testimony in a cause, and yet never be delivered or read to the tribunal in which the cause is pending. While counsel have well-nigh exhausted the field of discussion as to what the word ''testimony'' means, they have not said a word as to what the word ''affidavit'' means, and that, it seems to us, is an important inquiry in this connection. 1 Bouvier's Law Dictionary, Title ''Affidavit,'' defines it to be ''A statement or declaration reduced to writing, and sworn or affirmed to before some officer who has authority to administer an oath or affirmation. It differs from a deposition in this, that in the latter the opposite party has an opportunity to cross-examine the witness, whereas an affidavit is always taken *ex parte*. An affidavit includes the oath, and may show what facts affiant swore to, and thus be available as an oath, although unavailable as an affidavit. By general practice, affidavits are allowable to present evidence upon the hearing of a motion, although the motion may involve the very merits of the action; but they are not allowable to present evidence on the trial of an issue raised by the pleadings. · Here the witness must be produced before the adverse party.'' According to this definition of the word affidavit, it may contain evidence, and if evidence, then it is in a sense ''testimony,'' because it is the statement of facts witnessed by the affiant, only differing from a deposition in that the adverse party had no opportunity to cross-examine the witness.

Webster defines the word "testimony" as "a solemn
declaration or affirmation made for the purpose of estab-
lishing or proving some fact." Bouvier's Law Dictionary,
Title "Testimony," defines the word to mean "the state-
ment made by a witness under oath or affirmation."
Under these definitions of the words "testimony" and
"affidavit," they approach very close to the same mean-
ing, so far as the question here involved is concerned.
We are referred to *Storms* v. *Stevens*, 104 Ind. 46, on
statutory construction, by the learned counsel for the
state. We are, however, inclined to think it does not
lend very strong support to their contention; indeed, it
seems to us to support the contrary contention. In that
case, this court said: "In the construction of statutes,
the prime object is to ascertain and carry out the pur-
pose and intent of the Legislature. To do this, the
words used in the statute should be first considered in
their literal and ordinary signification. But if by giv-
ing them such a signification the meaning of the whole is
rendered doubtful, or is made to lead to contradictions or
absurd results, the whole statute must be looked to, and
the intent as collected therefrom must prevail over the
literal import of terms and detached clauses and phrases."
That case cites *Mayor of City of Jeffersonville* v. *Weems*,
5 Ind. 547, which fully supports the case quoted from,
and is to the same effect. Now, suppose we adopt
the construction contended for by appellee's counsel,
that the word "testimony" in the statute can only
include such statements as are made by a witness in
court on the trial of a cause. Then suppose on the
trial of the question of the competency of jurors to try
a criminal case that one of them heard a witness in a
conversation tell all about the transaction constituting
the crime, as an eye witness thereof, with which crime
the defendant is charged, and for which he is about to

be tried; and upon that conversation the juror had formed an opinion as to the guilt or innocence of the accused. All must concede a challenge for cause as to such juror must be sustained, for he is unquestionably incompetent under the statute. But here comes another juror who heard an affidavit stating the exact same facts read over to the same witness, saw him subscribe his name thereto, and then saw the officer swear him to the truth of the affidavit and put his jurat thereto, the affiant not speaking a word except to assent to the oath. Upon the statements contained in this affidavit, thus read in his hearing, this juror has formed an opinion precisely as the other did, and, according to appellee's contention, this juror is competent, and if he will say he thinks, notwithstanding such opinion, he can give the defendant a fair trial, he must be admitted to serve by the court over the challenge for cause by the defendant. All must concede that the incompetency of one of these jurors is precisely the same as the other, if we are to regard the substance of the matter. And yet, if appellee's construction of the statute is the true one, it makes one of them competent and the other incompetent, though they are exactly alike in their unfitness to try the case. Therefore, appellee's construction leads both to a contradiction and an absurd result, both of which are condemned by the case they cite.

In *City of Evansville* v. *Summers*, 108 Ind. 189, this court said, quoting from another case, with approval, that: "It is a settled rule of interpretation of statutes, that the application of the words of a a single statute may be enlarged or restrained to bring the operation of the act within the intention of the Legislature, when violence will not be done by such interpretation to the language of the statute." And, quoting in that case from another case, this court further said: "The chief thing to be explored

is the intention. This the judiciary is to seek in the history of legislation; in the objects contemplated, the evils to be corrected, and the remedies provided." And, further quoting from another case, this court said in that case: "It is an established rule, applicable to the construction of all remedial statutes, that cases within the reason, though not within the letter of a statute, shall be embraced by its provisions; and cases not within the reason, though within the letter, shall not be taken to be within the statute." See, also, *Zorger* v. *City of Greensburgh*, 60 Ind. 1; *Stout* v. *Board, etc.*, 107 Ind. 343; *Taylor* v. *Board, etc.*, 67 Ind. 383; *Maxwell* v. *Collins*, 8 Ind. 38; *State, ex rel.*, v. *Forkner, Auditor*, 70 Ind. 241.

We, therefore, conclude that an opinion of a proposed juror, based on reading an affidavit, or what purports to be an affidavit, of a witness to the transaction and acts constituting the crime charged, if not within the letter of the statute, is within the reason thereof making certain opinions a disqualification of a juror possessed of such an opinion. It therefore follows that the seven jurors named were disqualified to serve as jurors in this cause on account of the opinion they had formed upon reading the published affidavit of the witness Hannon. Therefore the court erred in overruling appellant's challenge to at least two of them.

It is also assigned, as one of the causes for a new trial, that the verdict is contrary to law.

It is contended, under this assignment, that the verdict should have been for involuntary manslaughter instead of voluntary manslaughter. But this was a question of fact for the jury, unless the evidence established involuntary manslaughter without any conflict. This question may not arise on another trial, as the evidence may not be exactly the same on another trial. It would sub-

serve no useful purpose, therefore, to express an opinion on the question thus made.

The judgment is reversed, and the cause remanded, with instructions to sustain appellant's motion for a new trial, and for further proceedings in accordance with this opinion.

The clerk is directed to issue the proper order for the return of the appellant to the custody of the sheriff of Wayne county, to abide the order of the circuit court.

Filed March 28, 1893.