## POPE v. BRANCH COUNTY SAVINGS BANK.

[No. 2,881.   Filed November 2, 1899.]

INTERROGATORIES TO JURY. — *Practice.* — Each interrogatory propounded to the jury must present a single material fact involved in the issue.  *p. 212.*

PLEADING.—*Answer.—Non Est Factum.—Bills and Notes.—Alteration of Note.—Instructions.*—Where a plea of *non est factum* was interposed in an action on a promissory note, and the evidence showed that a material alteration was made in the note after its execution, without the knowledge or consent of defendant, the court erred in instructing the jury that they should find for the plaintiff if it was shown by a preponderance of the evidence that defendant executed the note.  *p. 213.*

BILLS AND NOTES.—*Non Est Factum.—Bona Fide Holder.—Burden of Proof.*—Where in a suit on a note by a bank as indorsee the defendant filed a plea of *non est factum,* and introduced evidence showing that a material alteration was made in the note after its execution, without the knowledge or consent of defendant, to warrant a recovery the burden rested upon plaintiff to show that it was a *bona fide* holder for value.  *p. 213.*

SAME.—*Alteration of Note.—Instruction.*—An instruction in an action on a promissory note that if the note was signed and delivered with a blank space between the words "negotiable and payable at" and "bank" that the payee, or any indorsee thereof, had the right to insert the name of a bank was erroneous, where the evidence showed that the note was delivered with the understanding that it should not be payable in bank.  *p. 214.*

SAME.—*Non Est Factum.—Alteration of Note.—Instruction.*—An instruction in an action on a promissory note that if the jury found that the note was delivered with the agreement that it was not to be payable at any bank, and that the payee inserted the name of a bank in a blank in the note before the word "bank," in violation of the agreement, and the note came to plaintiff in this condition, in the usual course of business, in good faith, for a valuable consideration, then you should find for plaintiff, because the note was regular upon its face when it bought it, is erroneous, as it was within the province of the jury to determine whether the note was regular upon its face.  *pp. 215, 216.*

SAME.—*Alteration of Note.—Bona Fide Purchaser.—Instruction.*— Where defendant interposed the plea of *non est factum* to an action

Pope *v.* Branch County Savings Bank.

on a promissory note, on account of a change made in the note after its execution, an instruction that if the evidence showed that the note came to plaintiff, in the usual course of business, in good faith, for a valuable consideration, before maturity, that the jury should find for plaintiff was erroneous, as it is the duty of a purchaser of negotiable paper, before maturity, to make inquiry as to its genuineness if there is anything about the paper itself, or the circumstances surrounding its presentation for discount, calculated to excite suspicion in the mind of a reasonably cautious person. *pp. 215-217.*

INSTRUCTIONS.—*Abstract Propositions of Law.—Remedy.*—Available error cannot be predicated upon the action of the court in giving an instruction which was correct as an abstract proposition of law. The remedy in such cases is to request further instructions upon the proposition. *p. 217.*

EVIDENCE.—*Conclusion.—Bills and Notes.*—In an action on a promissory note it was error for the court to permit plaintiff to testify that he bought the note in good faith, as the question of good faith was one to be decided by the jury upon all the facts. *pp. 217, 218.*

From the Elkhart Circuit Court. *Reversed.*

*John M. Van Fleet* and *Vernon W. Van Fleet*, for appellant.

*O. T. Chamberlain* and *P. L. Turner*, for appellee.

COMSTOCK, C. J.—Appellee brought this action against appellant upon a promissory note alleged to have been executed by appellant to the order of Edwin A. Jones, who indorsed it in writing to Catherine Jones, who in turn indorsed it, before maturity, in writing to appellee. The note was for $236.68, with interest and attorney's fees. Appellant answered by *non est factum.*

No question is made upon the complaint or answer. The cause was tried by jury and a verdict returned for appellee in the sum of $263.40. With the general verdict answers to interrogatories were returned. The error assigned upon this appeal is the action of the court in overruling appellant's motion for a new trial.

It appears from the record that appellant and one Edwin

A. Jones were formerly partners in business. Upon the dissolution of the partnership, appellant executed the note in suit to Jones for the balance supposed to be due him on account of obligations growing out of the partnership business. The note was subsequently assigned to the wife of Jones, and by her, as above stated, to appellee. Appellant claims that he refused to execute a note payable in bank; that the note he signed and delivered to Jones was "negotiable and payable at —— Bank, Elkhart, Indiana," and that, after its execution, it was changed by writing before the word "Bank" the words "First National." This claim of appellant is sustained by the evidence.

The motion for a new trial contains ten reasons. Under the first and second, appellant complains of the verdict of the jury and the finding on the eighth interrogatory submitted to them. As our view of the law requires the reversal of the judgment, and as the questions presented by these reasons for a new trial may not arise upon a second trial, we do not pass upon them.

The refusal of the court to submit to the jury the sixth interrogatory asked by appellant is the third reason stated in the motion for a new trial. This interrogatory is in the following language: "It is true, is it not, that after said Edwin A. Jones had thus filled up said blank he, as agent of his wife, took said note to Coldwater, Michigan, and sold it to the plaintiff, and that at the time the plaintiff so purchased said note it clearly appeared that the words "First National" with which said blank was filled were in a handwriting different from that of the remainder of said notes?" This interrogatory called for several facts. It has been held by the Supreme Court that each interrogatory must present a single material fact involved in the issue. *Town of Albion* v. *Hetrick*, 90 Ind. 545, 548, 46 Am. Rep. 230; *Rosser* v. *Barnes*, 16 Ind. 502. Interrogatory number seven asked by appellant, and refused, is subject to the same objection.

The fifth reason for a new trial questions the ruling of the court in giving to the jury the first instruction asked by the appellee. The instruction is in the following language: "This is an action by the plaintiff, the Branch Co. Savings Bank, against the defendant, upon a note, a copy of which is set out in the plaintiff's complaint. The only defense which the defendant pleads to this note is his sworn statement that he did not execute the note. The court instructs you that if a fair preponderance of the evidence satisfies your minds that the defendant did execute the note sued upon, then you should find for the plaintiff in the sum of the principal and interest of said note with a reasonable attorney's fee for the plaintiff's attorney." The defendant answered by a plea of *non est factum*. This answer raised the question of the alteration of the note. *Wiltfong* v. *Schafer*, 121 Ind. 264. Two material questions were in issue: (1) Was there a material alteration? (2) Was appellee a *bona fide* purchaser? The evidence shows that there was a material alteration after the execution of the note, without the knowledge or consent of appellant. There was, therefore, no execution of the note as sued upon. The burden then rested upon the appellee to show that it was a *bona fide* holder for value. *Giberson* v. *Jolley*, 120 Ind. 301; *Palmer* v. *Poor*, 121 Ind. 135; *National Bank* v. *Ruhl*, 122 Ind. 279; *Schmueckle* v. *Walers*, 125 Ind. 265; *Kain* v. *Bare*, 4 Ind. App. 440; *Bunting* v. *Mick*, 5 Ind. App. 289. The evidence shows that the blank was fraudulently filled by Jones after the execution of the note, and against the express agreement of the parties. The only question raised by this instruction was whether appellee could recover notwithstanding the alteration. The question as to the good faith of appellee was taken from the consideration of the jury. It was a material question, and its omission from the instruction was erroneous and was harmful to appellant.

The second instruction given at the request of appellee, and excepted to, is as follows: ."The defendant claims that the note sued upon has been changed since he signed it by some one having inserted the words 'First National' before the word 'Bank' in said note. In other words, his claim is that the note when signed by him read 'negotiable and payable at ——— Bank, Elkhart, Indiana.' That a space about two inches wide before the word bank had no writing in it at the time he signed the note, and that the words 'First National' have been inserted in said space after he signed it and delivered it to Edwin A. Jones. The court instructs you that if the defendant signed the note while the space in front of the word 'Bank' was vacant, and that the note at the time he signed it read 'negotiable and payable at ——— Bank, Elkhart, Indiana,' then the payee of the note, Edwin A. Jones, or any indorsee of the note had a right to insert in said blank the name of any bank in Elkhart, Indiana." This instruction, as does the first, takes from the consideration of the jury the question of good faith of the appellee. The undisputed evidence shows that after the execution of the note, and contrary to the express understanding of the parties, the blank was filled. A payee or indorsee having notice of the agreement of the parties can not materially alter a note contrary to the express agreement of the parties thereto. Counsel for appellee insist that this instruction was correct and is in accord with the principle announced in *Marshall* v. *Drescher*, 68 Ind. 359. In that case the note was executed with the words "payable at" with a blank space after those words. The court found that the maker of the note did not intend to give his note payable in bank; that after the note was executed, without the knowledge or consent of the maker, the payee inserted the words after "payable at", "The First National Bank at Spencer, Indiana," and before it was due sold and transferred it to Morris, who sold and

transferred it to the plaintiff. It does not appear that the intention of the maker not to give his note payable in bank was communicated to the payee. The court said: "The payee had implied authority from the conditions of the note and from the statement of the maker to leave it at the First National Bank at Spencer for payment to fill up the blank in the note as he did. We think the finding shows that the note was valid in the hands of the payee notwithstanding the alteration, and being so valid, it was valid in the hands of the appellee whether he had notice of the alteration or not." There was no understanding that the note should not be payable in bank. The facts are widely different from those in the case at bar.

In *Palmer* v. *Poor*, 121 Ind., at page 137, the court in commenting upon *Marshall* v. *Drescher*, 68 Ind. 359, said: "The circumstances were such as to create the implication that the holder of the note had authority to fill the blank left in the instrument, and it was upon this ground that the note there under consideration was held valid. The case of *McCoy* v. *Lockwood*, 71 Ind. 319, asserts the doctrine that a material alteration will avoid a note even in the hands of a *bona fide* indorsee, refers to the cases of *Holland* v. *Hatch*, 11 Ind. 497, *Schnewind* v. *Hacket*, 54 Ind. 248, and *Collier* v. *Waugh*, 64 Ind. 456, with approval, and denies that a note in the hands of a *bona fide* holder is enforceable where it was altered by writing in it a place of payment."

The third instruction given at the request of appellee and excepted to is made the seventh reason for a new trial. It is as follows: "The court further instructs you that notwithstanding the fact that the defendant and Edwin A. Jones, the payee of the note, agreed that said note should not be payable at any bank, yet if the defendant signed the note, leaving the space in front of the word 'Bank' vacant, and

in violation of said agreement said Edwin A. Jones before he sold said note wrote in the words 'First National' before the word 'Bank', and if the note in this condition came into the hands of the plaintiff in the usual course of their business, in good faith, for a valuable consideration, and before its maturity, they having bought it from Catherine Jones, one of the indorsees upon the back of said note without any knowledge of the agreement between said defendant and said Edwin A. Jones, then you should find for the plaintiff, because the note was regular upon its face when they bought it and they had a right to buy it in good faith as commercial paper, and the defendant, Pope, can not defend against the plaintiff by reason of the fact that the words 'First National' were written in said note, in violation of the agreement between him and said Edwin A. Jones, and without his knowledge and consent; and under such circumstances the defendant would be bound, and your verdict would be for the plaintiff." This instruction is open to the objection that it tells the jury that the note was regular upon its face. Whether the note was regular on its face was a question for the jury. Whether there was anything in its appearance sufficient to excite the suspicion of a reasonably cautious person was a question of fact to be determined by the jury. It is subject to the further objection that it tells the jury that unless appellee had actual knowledge of the agreement between the maker and payee, that the note should not be made payable in bank, the alteration claimed would not render the note invalid as to it.

The law as announced by the Supreme Court and this Court in this State, with reference to the purchase of negotiable paper before maturity, is that if there is anything about the paper itself, or the circumstances attending its presentation for discount, calculated to excite suspicion in the mind of a reasonably cautious person, it is the duty of

the purchaser to make inquiry as to its genuineness; other-wise not. *Tescher* v. *Merea,* 118 Ind. 586; *Citizens Bank* v. *Leonhart,* 126 Ind. 206; *Hankey* v. *Downey,* 3 Ind. App. 325, 331; *Bank* v. *Berry,* 21 Ind. App. 261. We are inti-mating no opinion as to the significance of the fact that the note in question was in three different handwritings, or that it was negotiated at some distance from the place where payable. These were facts for the consideration of the jury.

The fifth instruction requested by appellee, and excepted to, informed the jury that "if one of two innocent people must suffer, the one must lose who put it in the power of another to fill up the blank and sell it to innocent pur-chasers." As an abstract proposition, this instruction cor-rectly states the law. Appellant should have asked for further instruction upon the subject of negligence of the parties if he desired it.

The third instruction given by the court of its own motion was excepted to. It is as follows: "If you find the note sued upon in this case was drawn up with the words 'in a Bank at Elkhart, Ind.,' leaving a blank space before the word 'Bank' in said note, then the payee of the note would have had the legal right to add the words 'First National' before the word 'Bank', and if that is all he did, your verdict will be for the plaintiff. This he could do without committing forgery, with or without the consent of the maker." The payee had no right to fill up a blank in violation of an agreement between the parties, which materially alters the note, with notice of such agreement.

Another reason for a new trial discussed by appellant is the action of the court in permitting the witness C. T. Gillet, cashier of appellee, after he had testified that he had bought the note in suit for $200, to answer the following question: "State whether or not you bought it in good faith?" To which question the witness answered, "We did." The question of good faith was one to be decided by the jury upon

all the evidence. It called for a conclusion of law and not the statement of fact. *Bunting* v. *Mick,* 5 Ind. App. 289; *Scotten* v. *Randolph,* 96 Ind. 581.

The position of counsel for appellee upon the questions presented upon the instructions is that if A give to B a perfect negotiable note, B would have no right to interline or fill in other material inconsistent with the character of the paper for the purpose of making it a negotiable note governed by the law merchant; but if A executes to B a note not perfect, and not complete upon its face, with proper blanks to be filled, B may fill those blanks not inconsistent with the character of the paper. That in the case at bar, an imperfect negotiable note was executed "payable at ———— Bank, Elkhart, Indiana," and that the payee was thereby authorized to fill in the name of any bank in the town named, for the purpose of making the note a complete negotiable note governed by the law merchant, for the reason that the name of the bank filled in is not inconsistent with the character of the paper. With the rule for which appellee's counsel contend, we find no fault. Its reason is thus stated in §181, Randolph on Commercial Paper (ed. 1886.) "The leaving of blanks in a contract and the delivery of the instrument with such blanks create an agency in the receiver and his assigns to fill the blanks in the way agreed upon or contemplated by the maker. * * * The authority to fill a blank in such case is derived wholly, as will be seen, from the implied agency created by the maker's act in putting the paper into circulation." This right is given by an implied authority; but authority can not be implied to do that which it is agreed shall not be done. The law will not make a contract contrary to the express agreement of parties. Counsel for appellee contend that blanks may be filled with matter germane thereto in violation of an existing agreement to the contrary, and that the note will be valid in the hands

of one having notice. We can not concur in this view of the law. In support of this proposition, counsel cite *DePauw v. Bank of Salem*, 126 Ind. 553. The opinion holding that when one signs a note in blank, or leaves blanks in it necessary to be filled out to make it a complete instrument, and delivers it in this condition, he clothes the holder with the implied authority to fill the blanks. It is said, at page 557 of the opinion: "And in such case, even if the blanks are filled in violation of the express understanding of the parties, he will be liable to an innocent holder, the note being negotiable." This falls far short of saying that the maker would be liable to a purchaser with notice. *Geddes v. Blackmore*, 132 Ind. 551, is also cited. William Winder signed a printed blank form of a promissory note, the date of the note, date of maturity, amount, name of payee, all being blank, and intrusted it to Geddes with verbal instructions to purchase hogs for a firm composed of William Winder and Asher Winder, to fill the blanks in the note, and deliver the same to persons from whom he purchased hogs, filling the date. The amount and name of the payee were to be filled by inserting the amount to be paid for the hogs and the names of the persons from whom the hogs were purchased. Geddes violated his instructions and used the note to borrow $1,000 of appellee Blackmore, filling the blank amount at $1,000 and the name of Blackmore as payee, and filled the other blanks. He signed the note himself as one of the payees, delivered the same to Blackmore, and received from him the $1,000. Geddes purchased no hogs, and did not use any of the money for the purchase of hogs for William Winder or the firm of Winder and Winder, nor did William Winder receive any of the money. The use made of the note was unauthorized, and was without his knowledge, and contrary to his instructions. The court held that Winder was liable because he had placed in the

power of Geddes to accomplish just what he did accomplish. It does not appear that Blackmore accepted the note with knowledge of the facts, nor is it claimed that there was anything in the appearance of the note to put him upon inquiry. Many cases are cited by counsel for appellee in line with the rule as stated by Randolph, *supra,* giving to the receiver of an instrument the implied authority to fill the blanks ."in the way agreed upon or contemplated by the maker," but no cases are cited, and we know of none, authorizing the payee or indorsee of a note with notice to fill a blank in a promissory note in direct violation of the understanding and agreement of the parties thereto.'

The judgment is reversed, with instruction to the trial court to sustain appellant's motion for a new trial.