## GRAND TRUNK WESTERN RAILWAY COMPANY v. THE STATE.

[No. 5,925. Filed December 19, 1907.]

1. STATUTES.—*Grammatical Construction.—Intent.*—The courts in construing a statute will ascertain the legislative intent, though they have to disregard the grammatical construction of the language used. p. 697.

2. SAME.—*Uncertainty.—Railroads.—Flagmen at Highway Crossings.*—Section 5260 Burns 1908, Acts 1891, p. 364, §1, providing that "all railroads owned or operated in the State having more than two tracks across any public highway or road and used for switching purposes exclusively, or regularly, or if only one track and used for switching purposes, said railroad corporation shall upon the order of the County Commissioners in which said railroad is located, place a flagman at said crossing and maintain the same at their expense," is not void for uncertainty. p. 698.

3. SAME.—*Railroads.—Maintaining Flagmen at Highway Crossings.*—Section 5260 Burns 1908, Acts 1891, p. 364, §1, providing that "all railroads owned or operated in the State having more than two tracks, * * * or if only one track * * * said railroad corporation shall * * * place a flagman" at certain highway crossings, applies to corporations owning and operating steam railroads. p. 698.

4. SAME.—*Railroads.—Location.*—Section one of the act of 1891 (Acts 1891, p. 364, §5260 Burns 1908), providing that "said railroad corporation shall, upon the order of the County Commissioners in which said railroad is located, place a flagman" at certain highway crossings, refers to the board of commissioners having the power to make such order for the appointment and maintenance of a flagman. p. 698.

5. SAME.—*Railroads.—Flagmen.*—Section 5260 Burns 1908, Acts 1891, p. 364, §1, providing that "said railroad corporation shall, upon the order of the County Commissioners in which said railroad is located, place a flagman" at certain highway crossings, empowers the board of commissioners of any county through which such railroad passes to make the requisite orders for flagmen within such county. p. 698.

6. SAME.—*Railroads.—Flagmen.—Expenses.*—Section 5260 Burns 1908, Acts 1891, p. 364, §1, providing that "said railroad corporation shall, upon the order of the County Commissioners * * * place a flagman at said crossing and maintain the same at their expense," imports that the expense should be borne by such railroad corporation, the plural "their" being evidently intended for the singular "its." p. 699.

7. PLEADING.—*Complaint.—Railroads.—Operation of.*—A complaint

filed May 15, 1905, incorporating an order of the board of commissioners stating that on March 7, 1905, the defendant railroad company owned and operated a certain described railroad, sufficiently shows that such road was built and complete on such earlier date.  p. 699.

8.  PLEADING.—*Complaint.*—*Railroads.*—*Alternative Allegations.*—A complaint alleging that the defendant's line of railway consists of four parallel and adjacent tracks, and that "said tracks are used exclusively or regularly by said company for the switching of cars and trains," is sufficient, under §5260 Burns 1908, Acts 1891, p. 364, §1, empowering boards of commissioners to require railroad companies to station flagmen at certain crossings, though apparently in the alternative, since, under either alternative, conditions are shown empowering the board to require the appointment of a flagman.  p. 700.

9.  SAME.—*Complaint.*—*Uncertainty.*—*Motion to Make More Specific.*—Where uncertainty appears upon the face of the complaint, a motion to make more specific is the proper remedy.  p. 700.

10.  EVIDENCE.—*"Regular" Use of Track for Switching.*—*Conclusions.*—It is proper to sustain an objection to the question whether the defendant company's track was "regularly" used for switching, the answer necessarily being a conclusion.  p. 701.

11.  TRIAL.—*Instructions.*—*General Words.*—*Adaptation.*—General words used in instructions will be adapted to the subject-matter in reference to which they are used.  p. 701.

12.  EVIDENCE.—*Judicial Notice.*—*Switching.*—Courts take judicial notice that railroad companies have no fixed time to do switching at the small stations along their routes, and that they do such switching whenever it becomes necessary in the conduct of their business.  p. 701.

13.  RAILROADS.—*Flagmen.*—*Duty to Maintain.*—*Evidence.*—Evidence showing that defendant railroad company maintained four tracks, two passenger tracks, one passing track and one storage track, over a highway, supports a judgment that such company is liable to a penalty for failure to maintain a flagman at such crossing, the board of commissioners having ordered the appointment of one for such crossing, under §5260 Burns 1908, Acts 1891, p. 364, §1.  p. 701.

From Laporte Circuit Court; *John C. Richter*, Judge.

Action by the State of Indiana against the Grand Trunk Western Railway Company.  From a judgment for plaintiff, defendant appeals.  *Affirmed.*

*Anderson, Du Shane & Crabill* and *Kretzinger, Gallagher, Rooney & Rogers,* for appellant.

*Charles W. Miller,* Attorney-General, *W. C. Geake, C. C. Hadley* and *H. M. Dowling,* for the State.

WATSON, J.—This action was brought to recover a penalty incurred by appellant in refusing to place a flagman at a certain highway crossing in Laporte county, contrary to the order of the commissioners of said county. Such an order is authorized by §§5260, 5261 Burns 1908, Acts 1891, p. 364. Appellant's demurrer to the complaint was overruled, and the case tried before a jury. A verdict was rendered against the company in the sum of $250.

The errors assigned are (1) the overruling of the demurrer; (2) the overruling of the motion for a new trial.

The first contention of appellant is that said act is void for uncertainty; that the rule of strict construction applies, and, when so applied, relieves appellant of any liability thereunder. Section 5260, *supra,* is in terms as follows: "That all railroads owned or operated in the State having more than two tracks across any public highway or road, and used'for switching purposes exclusively, or regularly, or if only one track, and used for switching purposes, said railroad corporation [*i. e.,* the corporation owning or operating such tracks] shall, upon the order of the county commissioners in which said railroad is located, place a flagman at said crossing and maintain the same at their expense from 6 o'clock a. m. to 8 o'clock p. m., of each and every day, or so long as said commissioners deem it necessary."

The act provides for the employment of watchmen at highways which are crossed by railroad tracks as therein described, and used regularly or exclusively for

1. switching purposes. It is well settled in this State that the courts will ascertain and carry out, if possible, the legislative intent, and "where the legislative sense is plain, the exact grammatical construction and propriety of language may be disregarded." *State* v. *Myers* (1896),

146 Ind. 36, and see *State Board, etc.*, v. *Holliday* (1898), 150 Ind. 216, 42 L. R. A. 826; *Abbott* v. *Inman* (1905), 35 Ind. App. 262; *Hoffmeyer* v. *State* (1906), 37 Ind. App. 526; Maxwell, Interp. of Stat. (3d ed. by Kempe), 385.

2. Some of the language used is not well chosen. Aside from such fault, there is nothing in the act which in any way renders it uncertain as applied to the facts of this case.

3. It is alleged in the complaint that the appellant is a corporation operating a steam railroad for the carrying of freight and passengers through the county of Laporte and through a specified quarter section thereof. If the attempt was to apply the statute to a person or partnership operating a railroad, the suggestions made along that line might be relevant. The legislative intention to describe a corporation of the class, which appellant is alleged to be, is perfectly obvious.

4. It is also urged that the railroad described is located "in the county commissioners." This phrase is used in designating the board which may make an order relative to the subject-matter of the section. That it was intended thereby to designate the board of commissioners of the county in which said railroad is located is apparent. But counsel say "Even if we so correct it, what then? The question will then arise, what county? Some roads run through ten counties. Appellant's road runs through four, each having a board of commissioners. What board, let us ask, would have jurisdiction?"

5. It cannot be presumed that the legislature intended by this act to confer extraterritorial jurisdiction upon any board of county commissioners, and, unless such presumption is indulged, there is no uncertainty as to which board of commissioners has authority to make such an order. Some roads run through several states. Does it follow that such roads are not located in any of said states? It is undoubtedly true that the entire road is not

situated in any one state, or in any one county, but it is located in each county and each state. When the board of commissioners of some county other than Laporte shall make orders relative to the crossing in Laporte county, appellant will have cause to complain.

The antecedent of "said railroad corporation" is necessarily implied, as above stated, and "their" expense means the expense of such corporation quite as clearly as though the pronoun "its," more correctly applied to a corporation, had been used. The statute is not void. It is defective in its grammatical construction, but it is not so deficient that the court cannot determine therefrom the legislative intent. Therefore the court will construe and apply it in accordance with such intent.

Two defects are urged as rendering the complaint bad on demurrer: (1) That it does not allege that appellant owned or operated said tracks on the date when the board of county commissioners ordered a flagman to be placed at the crossing; (2) that the facts are pleaded in the alternative.

The following are, in substance, the facts set out in the complaint. Appellant, a corporation, operates a steam railroad passing through a certain described quarter section in Laporte county, Indiana. The line of railroad consists of at least four parallel and adjacent tracks. Said tracks "are used exclusively or regularly" for switching trains and cars. There is, and has been for the last ten years, a public highway passing through said section, which is near the village of Stillwell, in Pleasant township, in said county. Said highway is called the Yellow river road, and is crossed at grade by said tracks. At a regular meeting of the board of commissioners of said county, March 7, 1905, said board found that said crossing was dangerous to the lives and limbs of those using the same, and ordered appellant to place a flagman thereat from 6 o'clock a.m. to 8 o'clock p.m. of each day. A certified copy of the order was served upon appellant, but said com-

pany has refused to comply therewith. It is alleged in the complaint, which was filed on May 15, 1905, that the appellant is a corporation operating a line of railroad. In the order of the board, made a part of the complaint, it is stated that appellant, at the date of said order, March 7, 1905, owned and operated the railroad described. There is not, therefore, any basis for the objection to the complaint that, so far as the allegations show, appellant's railroad was not built when the order was made.

The further allegation discussed is as follows: "That the line of railroad as aforesaid consists of at least four parallel and adjacent tracks; that said tracks are used exclusively and regularly by said company for the switching of cars and trains." The rule that allegations in pleadings shall be direct and certain, and not ambiguous or in the alternative, is well known. *Wheeler* v. *Thayer* (1889), 121 Ind. 64, 67. It is conceded that it would have been sufficient to allege that the tracks were used regularly and exclusively for switching purposes. This is what the allegation amounts to. Some of the tracks may have been used regularly and some of them exclusively for such purposes. If there was any uncertainty in the allegations it was upon the face of the pleading, and should have been pointed out by a motion to make the complaint more specific. *Mulky* v. *Karsell* (1903), 31 Ind. App. 595; *Smelser* v. *Pugh* (1902), 29 Ind. App. 614; *City of Hammond* v. *Meyers* (1899), 23 Ind. App. 235; *Cleveland, etc., R. Co.* v. *Wynant* (1889), 119 Ind. 539; *Starkey* v. *Starkey* (1894), 136 Ind. 349, 354.

In all those cases cited in which allegations in the alternative were held to make a pleading bad one or the other of the alternatives failed to furnish any basis of support to the action. These cases do not apply to the question here presented, because either alternative furnished a basis of liability.

The objection to appellant's question as to whether the

south track was regularly used for switching was properly sustained. The question called for a conclusion by the witness. *Pope* v. *Branch County Savings Bank* (1899), 23 Ind. App. 210; *Chicago, etc., R. Co.* v. *Cummings* (1900), 24 Ind. App. 192; *Insurance Co., etc.,* v. *Osborn* (1901), 26 Ind. App. 88.

The refusal to give instructions five and six, requested by appellant, is given as a further reason for granting a new trial. These instructions defined the word "regularly," and may be considered together. In appellant's brief it is said: "'Regularly' obviously means in this connection at certain times or certain intervals of time, according to some certain, uniform and well-established practice." The meaning of general words will be adapted to the subject-matter in reference to which they are used. *Ross* v. *State* (1894), 9 Ind. App. 35; *Woods* v. *State* (1893), 134 Ind. 35; *City of Evansville* v. *Summers* (1886), 108 Ind. 189; *Maxwell* v. *Collins* (1856), 8 Ind. 38; Endlich, Interp. of Stat., §86.

It is a matter of common knowledge that switching is done only as necessity arises in the course of transacting the railroad business. From the very nature of such business it cannot be limited to certain intervals of time. If the switching is done whenever it becomes necessary, in conformity with the established mode, and is a part of the routine business conducted at that point, it is within the meaning and intent of the statute, and slight variations in the length of the intervals between the particular acts of switching will not exempt appellant from the operation of the statute. There was no error in refusing the instructions.

The final ground assigned for a new trial is that the evidence does not support the verdict. The evidence discloses the fact that four parallel tracks cross the highway known as the Yellow river road. The two tracks to the south are called the main line, it being a double-

track system.  The third track from the south is called a passing track.  It connects at each end with the north main track.  The fourth track from the south is called a storage track, and is connected with the passing track.  Extending from the south main track and connecting it with the Lake Erie & Western tracks is a Y, but the Y does not cross said highway.  Projecting from the Y, and parallel to the south main track, is a spur or track called the grain track.  It is used for cars which are being loaded with grain for shipment on the lines of appellant company.  The main tracks are connected by crossovers.  The storage track is connected with the Lake Erie & Western tracks by a double Y.  The coal dock track is a continuation of the storage track.  The evidence shows that while cars are stored on the fourth track they are very frequently moved, often crossing the highway.  Twice each day, except Sunday, the local freights, one from each direction, put coal upon the coal dock.  To do this the west-bound freight switches onto the passing track, and then the engine puts up the coal, often crossing said highway in so doing.  The east-bound freight switches from the south main track across the north main track onto the passing track, and then puts up coal.  When cars consigned to eastern points are received from the Lake Erie & Western Railway Company, the engine from the east-bound train must switch across all the tracks to the north Y, where such cars are delivered.  When two trains from the same direction are to pass, one must switch into the passing track, generally crossing said highway.  Cars from the east, consigned to the Lake Erie & Western Railway Company, must be switched over to the south main track, and then onto the south Y, generally having to cross said highway.  Likewise, in taking cars from the grain track, the highway must frequently be crossed.  The verdict is fully sustained by the evidence.

Judgment affirmed.  Hadley, P. J., not participating.