## PENNSYLVANIA COMPANY *v.* MOSHER ET AL.

[No. 6,929. Filed May 10, 1911.]

1. RAILROADS. — *Tracks.* — *Switching.* — *Flagmen.* — Under §5260 Burns 1908, Acts 1891 p. 364, §1, providing that "all railroads * * * having more than two tracks across any public highway or road, and used for switching purposes exclusively, or regularly, or if only one track, and used for switching purposes," the company, when ordered to do so by the board of commissioners, must keep a flagman at such crossing, a company that has two main tracks and two other tracks on which whole trains are switched so as to permit the passage of trains on the main tracks, on the order of the proper board, must maintain a flagman. pp. 559, 562.

2. STATUTES.—*Construction.*—In construing a statute the intent of the legislature should be kept constantly in view. pp. 560, 562.

3. STATUTES.—*Construction.*—*Intent.*—*Letter.*—The intent of the legislature will be carried out, though the strict letter of the statute may not be followed. p. 560.

4. STATUTES.—*Alternative Constructions.*—That construction of a statute will be adopted which makes it effectual rather than one which defeats its purpose. p. 560.

5. STATUTE.—*Words.*—The words used in a statute will be given their ordinary meaning unless that would defeat the legislative intent. p. 561.

6. STATUTES.—*Technical Words.*—Technical words used in a statute will ordinarily be given their technical meaning.   p. 561.

7. STATUTES.—*Remedial.—Words.*—Words in a remedial statute will be given their broadest and most liberal meaning.   p. 561.

8. RAILROADS.—*"Switching." — Statutes. — Evidence.* — The word "switching," as used in §5260 Burns 1908, Acts 1891 p. 364, §1, providing that railroad companies shall maintain a flagman at their highway crossings where they have more than two tracks and one of them is used for "switching" purposes, imports the shifting of one or more cars or trains from one track to another, and the exclusion of evidence showing the technical meaning of such word is harmless.   p. 563.

From Whitley Circuit Court; *Joseph W. Adair,* Judge.

Action by Lyman C. Mosher and others against the Pennsylvania Company. From a judgment for plaintiffs, defendant appeals. *Affirmed.*

*Zollars & Zollars* and *E. K. Strong,* for appellant.

*Andrew A. Adams,* for appellees.

*James Bingham,* Attorney-General, *W. H. Thompson, E. M. White, A. G. Cavins* and *Benton E. Gates, amici curiæ.*

HOTTEL, J.—This is a proceeding based upon §5260 Burns 1908, Acts 1891 p. 364, §1, and was commenced before the Board of Commissioners of the County of Whitley, by filing a petition signed by a number of the citizens of said county, asking said board to make an order requiring appellant to keep a flagman at a certain crossing of appellant's railroad with one of the public highways of said county. The petition alleges that its signers are residents of said county, and have frequent occasion to use the highway at said crossing, particularly describing the location and course of said highway and of said railroad; that the tracks of the Pennsylvania Company, operating the Pittsburgh, Fort Wayne and Chicago Railroad, cross said highway; that four tracks of said railroad company cross said highway at said point, two of which tracks are main tracks, and two tracks are sidings or switches, and are used exclusively for switching.

There was a trial before said board of commissioners, and an order granting the prayer of the petition, from which order an appeal was granted to the circuit court. In the Whitley Circuit Court there was a trial by the court, a special finding of facts, with conclusions of law thereon in favor of appellees, viz.: ''(1) That the petitioners * * * are entitled to have a flagman at the crossing described, * * * maintained at the expense of said Pennsylvania Company between the hours of 8 o'clock a. m. and 7:30 o'clock p. m.   (2) That the petitioners * * * are entitled to recover their costs herein.'' There was a judgment on the finding, and this appeal was taken.

Appellant has assigned ten errors, but several of them, in different form, present the same question, so that in fact there are but three alleged errors presented and argued, viz.: The error of the court in its conclusions of law on the facts found, the error on the ruling on the motion for new trial, and the insufficiency of the petition, in that it failed to state facts sufficient to give either the Board of Commissioners of the County of Whitley or the Whitley Circuit Court jurisdiction of the subject-matter.

Section 5260, *supra,* on which this action is based, is as follows: ''That all railroads owned or operated in the State having more than two tracks across any public highway or road, and used for switching purposes exclusively, or regularly, or if only one track, and used for switching purposes, said railroad corporation shall, upon the order of the county commissioners in which said railroad is located, place a flagman at said crossing and maintain the same at their expense from 6 o'clock a. m. to 8 o'clock p. m. of each day and every day, or so long as said commissioners deem it necessary.''

The finding of facts made by the lower court is eminently fair, and seems to have been made with the view of presenting clearly to this court the alleged errors which appellant's counsel, in their brief, so earnestly insist were

made by the court below. Those facts, which are important and which control the questions presented by this appeal, are: "(3) At said crossing point, known as the 'poorhouse crossing,' said Pennsylvania Company maintains and operates four railroad tracks, and has so maintained and operated said tracks for more than two years last past. (4) The two middle tracks are known as main tracks, the south main track being used for east-bound trains, and the north main track being used for west-bound trains. (5) On the north side of said main tracks at said crossing point there is a side-track, and on the south side of said main tracks there is also a side-track. Said side-tracks are of about equal length, and extend from a point about one-third of a mile east of said crossing to a point about one and one-third miles west of said crossing. (6) The ends of each siding are connected with the main track next to it by means of switches, operated from an adjacent tower. (7) Said sidings are regularly and exclusively used by said Pennsylvania Company for switching thereon trains from said main tracks, to permit other trains going in the same direction to pass on said main tracks, and then for the purpose of switching said trains back onto said main tracks. (8) Said sidings are not used by said company in making up trains or in distributing cars, but are wholly used for the purposes set out in finding seven."

Appellant first presents and urges its assignment of error that "the Whitley Circuit Court erred in its conclusions of law on the special finding of facts by said court." This assignment of error presents the real question in the case.

Appellant's contention is that the word "switching," when used in connection with railroad tracks and the operation of trains thereon, means the making up or 1. breaking up of trains, and that the moving of an entire train from the main track or line to a sidetrack, to allow another train going in the same direction to pass the train so side-tracked, is not switching within the

meaning of the statute; that by the seventh and eighth findings the court, in effect, finds that appellant's side-tracks are not used for "switching" purposes, within the meaning of the statute, and therefore the court's conclusions of law should have been for appellant.

From these observations it will be seen that the real question in this case turns upon the construction to be given to §5260, *supra*, and this construction depends upon the meaning of the word "switching" as used in said section. We submit some general rules which we think important and applicable to questions here presented:

(a) It seems to be the settled law of this State, and of other jurisdictions as well, that in construing a statute the probable intention of the legislature in enacting the statute should be kept constantly in view, and that this legislative intention, as collected from the examination of the whole, as well as the separate parts of the statute, should have a controlling influence. *United States Sav., etc., Co.* v. *Harris* (1895), 142 Ind. 226, 231; *State, ex rel.,* v. *Roby* (1895), 142 Ind. 168, 182, 33 L. R. A. 213, 51 Am. St. 174; *Travelers Ins. Co.* v. *Kent* (1898), 151 Ind. 349; *Middleton* v. *Greeson* (1886), 106 Ind. 18, 21; *Greenbush Cemetery Assn.* v. *Van Natta* (1912), 49 Ind. App. ——; 2 Lewis's Sutherland, Stat. Constr. (2d ed.) §376.

The intent of the legislature will be carried out, when it can be ascertained, although in doing so the strict letter of the statute may not be followed. *Abbott* v. *Inman* (1905), 35 Ind. App. 262; *Parvin* v. *Wimberg* (1892), 130 Ind. 561, 15 L. R. A. 775, 30 Am. St. 254; *Grand Trunk, etc., R. Co.* v. *State* (1907), 40 Ind. App. 695.

"If two constructions are possible, that one should be adopted which makes effectual, rather than one which defeats, the purpose of the law." *Greenbush Cemetery Assn.* v. *Van Natta, supra.* See also, *Storms* v.

*Stevens* (1885), 104 Ind. 46, 50, 51; *Miller* v. *State, ex rel.* (1886), 106 Ind. 415, 423, 424.

(b) As a general rule, the words of a statute will be construed in their plain, ordinary and usual sense, and it is only where such construction will manifestly re-
5. sult in the defeat of the legislative intent that they will not be so construed. §240 Burns 1908, §240 R. S. 1881; *White* v. *Furgeson* (1902), 29 Ind. App. 144; *Massey* v. *Dunlap* (1896), 146 Ind. 350, 358; *Coffinberry* v. *Madden* (1903), 30 Ind. App. 360, 96 Am. St. 349.

(c) It is only "technical words and phrases having a peculiar and appropriate meaning in law" that
6. "shall be understood according to their technical import." See §240, *supra,* and authorities last cited.

(d) Where necessary to accomplish the remedial purpose of a statute, words or phrases used therein will be given as broad a meaning as their use in the statute
7. will justify. *Toledo, etc., R. Co.* v. *Bond* (1905), 35 Ind. App. 142, 153.

In 2 Lewis's Sutherland, Stat. Constr. (2d ed.) §348, the author says upon this subject: "Not only may the meaning of words be restricted by the subject-matter of an act or to avoid repugnance with other parts, but for like reasons they may be expanded. The application of the words of a single provision may be enlarged or restrained to bring the operation of the act within the intention of the legislature, when violence will not be done by such interpretation to the language of the statute."

In Endlich, Interp. of Stat. §73, it is said: "The words of a statute are to be understood in the sense in which they best harmonize with the subject of the enactment and the object which the legislature has in view."

Upon the first rule before stated, our Supreme Court and this court have declared what shall be considered in determining the legislative intent. The Supreme Court in the

case of *State Board, etc.*, v. *Holliday* (1898), 150 Ind. 216, 233 said upon this subject: "In order to ascertain the intention of the legislature the court should look to the letter of the statute, to it as a whole, to the circumstances under which it was enacted, to the old law, if any, to the mischief to be remedied, to other statutes, to the rules of the common law, and to the condition of affairs when the statute was enacted." See, also, *City of New Albany* v. *Stier* (1905), 34 Ind. App. 615.

In 2 Lewis's Sutherland, Stat. Constr. (2d ed.) §347, the author says: "It is indispensable to a correct understanding of a statute to inquire first what is the subject of it, what object is intended to be accomplished by it. When the subject-matter is once clearly ascertained and its general intent, a key is found to all its intricacies;—general words may be restrained to it, and those of narrower import may be expanded to embrace it to effectuate that intent. When the intention can be collected from the statute, words may be modified, altered or supplied so as to obviate any repugnancy or inconsistency with such intention. * * * The inquiry, where any uncertainty exists, always is as to what the legislature intended, and when that is ascertained it controls."

It is beyond doubt the purpose of the statute here in controversy to make grade railroad crossings over public highways, outside of incorporated towns and cities, more safe for public travel. The act, by its express terms, affects only such crossings as pass over highways controlled by county commissioners. This fact furnishes a strong argument against appellant's contention, because to give the act the restricted and limited meaning contended for by appellant would be practically to defeat the purpose of its enactment. We think it a matter of common knowledge, that very few switches or side-tracks in the country are used for making up or breaking up trains, but

many are used for switching or diverting trains while other trains pass on the main line. It is true, as appellant insists, that the danger from switching back and forth over the crossing, making up and breaking up a particular train, is multiplied by the frequency of its passage over the crossing; yet the danger of an entire train's passing over the crossing is just as great, or even greater, when it passes over the siding at the same time the passing train is passing over the main line, as that of a part of a train or a few cars, and when such side-tracks are used exclusively or regularly for switching or diverting such entire trains, as the court in this case found, we think they clearly fall within the intent and purpose of the statute in question. And measured alone by the rules announced in the authorities cited on the subject of carrying out the intent and purpose of the legislature, we think the conclusions of law on the facts found by the lower court correct.

8.    We shall next consider whether this construction of this statute does violence to the meaning of the word "switching" used therein.

The word "switch" is defined by the Standard Dictionary as follows: "To shift from one track to another, as a car or train; shunt; figuratively, to change or shift, as a course of conduct. * * * A device for moving a small section of track so that rolling-stock may be run or shunted from one line of track to another."

The definition in Webster's International Dictionary is as follows: "4. To turn from one railway track to another; to transfer by a switch; generally with off, from, etc.; as, to switch off a train; to switch a car from one track to another."

One of the definitions in the Century Dictionary is as follows: "In rail., to transfer by a switch; transfer from one line of rails to another."

In Clarkson's Standard American Dictionary is the fol-

lowing definition: "In railways, a movable part of a track by which the direction of a train is changed from one set of rails to another."

In Words and Phrases will be found the following definition: "A 'switch,' as the term is used in railroading, is defined as a 'device for moving a small section of track, so that rolling stock may be run or shunted from one line to another,' and 'in railroads, in its simplest form, two parallel lengths of rail, joined together by rods, pivoted at one end, and free to move at the other end, forming a part of the track at its junction with a branch or siding.' * * * A switch is but a mechanical contrivance or movable opening to pass the cars from one track to another. A power to construct side tracks implies a power to connect the side tracks with the main track by switches."

In the case of *Philadelphia* v. *River Front R. Co.* (1890), 133 Pa. St. 134, 139, 19 Atl. 356, the word "siding" is defined as follows: "The words sidings, switches, and turnouts, in relation to railroads, are of course of modern growth, and, not only in popular use, but in the dictionaries, are treated as to some extent interchangeable. Thus, the only definition that Webster gives of siding is 'the turnout of a railroad' (noted as English), and turn-out is defined as 'a short side-track on a railroad which may be occupied by one train while another is passing on a main track; a siding.' "

This court, in the case of *Grand Trunk, etc., R. Co.* v. *State* (1907), 40 Ind. App. 695, gave to the word "switch" the same common and usual meaning recognized and expressed in the definition just given. The court in that case said at page 702: "Twice each day, except Sunday, the local freights, one from each direction, put coal upon the coal dock. To do this the west-bound freight switches onto the passing track, and then the engine puts up the coal, often crossing said highway in so doing. The east-bound freight switches from the south main track across the north

main track onto the passing track, and then puts up coal. When cars consigned to eastern points are received from the Lake Erie and Western Railway Company, the engines from the east-bound train must switch across all the tracks to the north Y, where such cars are delivered. When two trains from the same direction are to pass, one must switch into the passing track, generally crossing said highway. Cars from the east, consigned to the Lake Erie and Western Railway Company, must be switched over to the south main track, and then onto the south Y, generally having to cross said highway. Likewise, in taking cars from the grain track, the highway must frequently be crossed. The verdict is fully sustained by the evidence."

We think this case practically decides the question here involved. So, also, does the case of *Toledo, etc., R. Co.* v. *Bond, supra,* strongly support appellee's position in this case, when the purpose of this act is taken into account.

Counsel for appellant insist that this word has a technical meaning common to railroad parlance, but we have been unable to find any such meaning recognized by any of the authorities heretofore cited, and in fact we are unable to see wherein the authorities cited by counsel furnish any support for their contention. Appellant lays considerable stress on a definition of "switch yard" quoted from Words and Phrases, but we can see nothing in this definition in conflict with the definitions before given, or our opinion thereon expressed. The limitation of this definition to cars, and to the making up and separating of trains, results from the word yards, and not because of any intent so to limit the meaning of the words "switch" or "switching." Of course said words apply to cars or parts of trains the same as to entire trains; and a yard being a place where cars, and not entire trains, are placed and kept, and where trains are made up and separated only, the limitation in the definition necessarily follows.

These definitions and authorities upon the meaning of

the words "switch" and "switching" lead us to the conclusion that the construction of the statute in accord with the purpose and intent of the legislature in its enactment is fully within the letter of the statute, and that no violence is done to either the spirit or letter of the act by such construction. We are, therefore, of the opinion that the court below committed no error in its conclusions of law on the facts found.

Appellant next urges that the court erred in overruling its motion for new trial, and insists that the evidence is insufficient to sustain the verdict. As supporting this contention, appellant relies upon the evidence of certain of its employes who testified that they understood that "switching" applied only to making up or breaking up of trains, and was not by them understood to apply to the diversion of an entire train on a side-track to accommodate the passage of faster trains on the main line going in the same direction. Appellant insists that under this proof the court should have adopted this meaning of the word switching; that it was the duty of the lower court and the duty of this court to construe this word "switching" "in accordance with the meaning of that word in railroad parlance." There would be better reason for appellant's contention if the purpose of this statute was to benefit those operating or in charge of the railroads, because, in that event, the intent and purpose of the statute would be carried out, by giving the word the meaning which it was understood to have by those for whose benefit the statute was enacted. But no such reason exists in this case, where the purpose of the statute is to benefit the general public. Upon the other hand, the purpose of the statute is better effected by giving to the word its common and usual meaning, understood by the public in general. In the absence of any technical definition of the word, such as testified to by the witnesses, and in view of the authorities cited, gov-

erning the construction of statutes, this evidence should not prevail against the commonly accepted meaning of the word.

Appellant further urges that even though the diversion of an entire train be switching, all the evidence shows that there was in fact no switching done at the crossing in question, but that the switching was all done one-third of a mile east and one and one-third miles west of the crossing. A sufficient answer to this argument is the fact that the proof showed that such entire trains so switched or diverted on the side-tracks passed over the crossings.

It is next insisted that the court erred in excluding certain offered evidence defining the word "switching," as understood in "railroad parlance." As before indicated, each witness was permitted to testify what he, as a railroad man, understood the word to mean, and in view of our opinion upon the main question in this case the exclusion of this evidence, even if error, could not have been harmful.

Appellant questions the sufficiency of the petition to give the Board of Commissioners of the County of Whitley and the Whitley Circuit Court jurisdiction of the subject-matter. The statute makes no provision for the manner of procedure in such cases, but the petition herein states the facts made essential by the statute in substantially its exact terms. The statute itself expressly gives to the board of commissioners jurisdiction in such cases, and the statute has been held valid. *Grand Trunk, etc., R. Co.* v. *State, supra.*

We find no error in the record. Judgment affirmed.

Adams, J., did not participate.