ADAMS ET AL. *v.* SLATER, ADMINISTRATOR ETC., ET AL.

[No. 19,342. Filed June 19, 1961.]

106

*John H. Logan,* of Fort Wayne, for appellants.

*C. A. Lincoln, James P. Murphy, Martin P. Torborg* and *Thomas M. Moorhead, Jr.,* all of Fort Wayne, for appellees.

Ax, J.—This action was commenced by the Administrator of the Estate of Anna Belle Rinard, deceased, filing a Petition to Determine Heirship. C. A. Lincoln, Guardian Ad Litem for Dianna Strasser, filed an Answer to said Petition to Determine Heirship. This Answer sought to have the Court determine that said Dianna Strasser be declared to be the sole heir of said decedent and as such entitled to inherit all of the property left by said decedent. To the Answer of said Guardian Ad Litem, all of the brothers and sisters of said decedent and descendants of deceased brothers of said decedent, with the exception of Viola Baurassa, filed an answer of denial under Rule 1-3.

The court below held that Dianna Strasser was the sole and only heir of the said decedent therefore ordering that she inherit the entire estate.

By this appeal, appellants have argued that the finding and decision of the court is not sustained by sufficient evidence and is contrary to law.

On January 27, 1949, Frances M. and Anna Belle Rinard, being husband and wife and having no children of their own, adopted Winona Jane Whitaker.

Winona Jane, being 26 years of age at the time of the adoption, was the daughter of Tina Whitaker, the deceased sister of Anna Belle Rinard, the decedent herein.

Winona Jane Whitaker (whose name was changed to Winona Jane Rinard), lived for a period of time, after her natural mother's death, with the decedent and her husband before her adoption. On the 5th day of March, 1949, which was some thirty-nine days after the adoption, she married Richard Strasser, and on January 26, 1950, she gave birth to Dianna Strasser, the appellee herein. On May 13, 1956, Winona Jane died, leaving as survivors her daughter, husband, and her adopting mother, Anna Belle Rinard, her adopting father having predeceased her.

On March 4, 1958, Anna Belle died intestate, leaving as her survivors some fifteen individuals, including appellee, the child of her adopted daughter, the others consisting of brothers, sisters, and descendants of deceased brothers and sisters.

The primary question involved here is whether Diana Strasser is the sole and only heir of the decedent, Anna Belle Rinard, as a granddaughter with preference over the other survivors.

Appellants argue that Dianna is not the sole and only heir of the said decedent, Anna Belle Rinard, and if she is entitled to a share of the said estate, it is not as a granddaughter but as a grandniece.

The issues involved herein arise from the interpretation of certain statutes of this state.

Appellants vehemently argue that:

"This entire appeal presents a question for consideration by this Court as to whether or not the Indiana Probate Code (Acts of 1953, chap. 112, §101, et seq. being Burns' §6-201 et seq. 1953 Replacement effective January 1, 1954) accomplishes a new law for intestate succession through a child legally adopted when an adult, prior to, but dying after the effective date thereof. Stated in another way: Did the Indiana Probate Code effective January 1, 1954 (Burns' §6-201 et seq.) have the effect

of repealing Acts of 1941, chap. 146, §7 as amended by the Acts of 1943, chap. 40, §6 (Burns' 1946 Replacement 3-121)?"

In support of this contention appellants rely heavily upon *Scott* v. *Scott, Admrx., et al.* (1958), 238 Ind. 474, 150 N. E. 2d 740. In that case the problem pertinent to our question in this appeal which confronted the Supreme Court was whether under the Probate Code of 1953 a child adopted as a minor could inherit from his natural parents. The court, in that opinion was concerned with the specific language of the last sentence of §3-121 of Burns' 1946 Replacement which reads:

"... Nothing in this act (§3-115—3-125) shall be construed to prevent a legally adopted person from inheriting property from his or her natural parent or other kind."

The court in answering the above question held in construing §6-208 (a), Burns' 1953 Replacement, with the above quoted section that:

"... if these two statutes are repugnant and irreconciably in conflict as apparently contended by appellant, the later expression of the legislature controls and *repeals* the former act *to the extent* of the repugnancy. ..." See p. 480. (Our emphasis.)

The section of the Probate Code, as cited above in the Scott case, i.e., §6-208, is the same section which gives rise to the controversy here in the instant case. It should however be noted that the Scott case was dealing with Subsection (a) of §6-208, whereas we are concerned with Subsection (b) of that same section. The pertinent parts of Subsection (a) dealt with in the Scott case reads:

". . . a child legally adopted during his minority . . . shall cease to be treated as the child of his natural parents . . . for purposes of intestate succession . . . ."

Upon carefully considering the Scott case we do not find wherein the Supreme Court has ruled that the Probate Code of 1953 repealed the entire section of §3-121, Burns' 1946 Replacement. We can see where it rightfully held that that portion of §3-121, which authorizes an adopted minor child to inherit from his natural parents, would be in direct conflict with Subsection (a) of §6-208 as quoted above. In our opinion this is what was meant by the above emphasized portion of the language quoted from the Scott case. Thus, in answer to appellants' question, it is our opinion that only that portion of §3-121 which is in conflict with Subsection (a) of §6-208 dealing solely with minor children and their natural parents has been repealed.

Prior to the adoption of §6-208 (a), Burns' 1953 Replacement, there appears to have been no particular distinction made in this state, for purposes of intestate succession, between a child adopted as a minor and a child adopted as an adult. (See §3-124 of Burns' 1946 Replacement.) With respect to inheritance from his natural parents, the prior law on adoptions did not affect the rights or legal capacity of the adopted child. *Head* v. *Leak* (1916), 61 Ind. App. 253, 111 N. E. 952; *Scott* v. *Scott, supra.* It, therefore, would seem imperative that if the legislature intended to change this status it owed an obligation to clarify once again the status of an adult child. This we believe was done in enacting Subsection (b) of §6-208, Burns' 1953 Replacement. Here once again the legislature reaffirmed that:

"For the purpose of inheritance to, through and from a child legally adopted when an adult, such child shall be treated as the child of his natural parents for purposes of intestate succession . . . ."

However, the legislature added these additional words:

". . . except that he shall in addition be entitled to inherit as a child from the adopting parent or parents."

It appears that an adopted adult child's status with respect to his adopting parents is not affected by the fact that he may also inherit from his natural parents. The use of the general term "as a child" further emphasizes that the child legally adopted when an adult shall acquire the same rights as other children of the adoptive group.

The use of the word "from" which follows the words "as a child" in that section seems to give rise to appellants' notion that a child legally adopted when an adult can inherit *from* the adopting parents, but that a child of the adopted child cannot inherit through the adopted child, therefore affecting his legal status with regard to intestate succession. To this theory we cannot subscribe.

The use of the word "from" seems to rarely give us difficulty. But, when it is used in statutes affecting the inheritable rights of individuals it seems to pick up an extra judicial meaning. The question is what does it mean here? In order to answer this it is necessary to look once again to the words "as a child."

A "child" is defined in §6-103, Burns' 1953 Replacement. There the legislature has stated that the term "child" shall include adopted children. Since no distinction is made between adults and minors, we must

conclude that the legislature intended that all adopted children regardless of age shall be included. Wherever the word "child" is used in a restricted sense it is specifically qualified or clarified by other words within the same section of the statute. Here, the only qualification made is that an adult adopted child shall inherit from his natural parents, which is clearly a distinction not afforded to adopted minor children. Hence, if an adopted adult child is to be treated "as a child" i.e., to the same degree as any other adopted child, whether minor or adult, the word "from" as used here takes on its common use meaning.

In interpreting statutes, unnecessary strain should not be placed on words in order to give effect to the interpreter's preconceived meaning. Specific words of a statute ought not to be enlarged or restricted when it is apparent that they were not intended to be given such construction. If it appears that more than one construction is possible then it is the duty of this Court to give the construction which will give meaning to its purpose or object. *State* v. *Rice* (1956), 235 Ind. 423, 134 N. E. 2d 219; *J. Wooley Coal Co.* v. *Tevault* (1918), 187 Ind. 171, 118 N. E. 921, 119 N. E. 485; *Lewis* v. *Smith's Estate* (1959), 130 Ind. App. 390, 162 N. E. 2d 457; See also 26 I. L. E. Statutes, §§113, 114.

The reason for the distinction between a child adopted when an adult and a child adopted when a minor has been given attention by Judge Landis in the Scott case, *supra*. (See page 483.) The adoption of adults are few, and questions are often raised as to why it is done. In order to carry the thoughts, as presented in the Scott case, a little further, we believe it is pertinent to give some consideration to the many reasons why one would adopt a child which is an adult.

Oftentimes married couples without children of their own, realizing that age is advancing upon them, desire to create by legal method a family so that they might share the joy of seeing an adopted child acquire success in life and that they might take pride in having grandchildren and knowing that the fruits of their own labors do not go unattended. The knowledge that they will have a personal relationship, such as that enjoyed between parent and child warms the hearts and motivates such adoptions. In the case in which a child is adopted when an adult, especially where the natural parents of such child are deceased and the child has lived for sometime in the home of the adopting parents, the needs as above expressed often are mutually shared. In the case where the child that has been adopted as an adult and the natural parent or parents are still living, the motivation for such adoption is often founded on a somewhat different basis. In such a case the child might share in a normal relationship of an adult child with his adopting parents without being compelled to sever all ties with those to whom he is biologically connected and where the embers of love have not yet been completely extinguished. Under certain circumstances in which the adult child's natural parent or parents are still living it might be virtually impossible to maintain a normal relationship with such parent or parents. But this does not preclude that such relationship is not desired. The natural parent's mental, marital or social condition may be such as would invite discontentment between the parent and child. In our opinion it is logical to assume that the legislature had these thoughts in mind in making such a distinction between a child when adopted as a minor and a child when adopted as an adult.

In arriving at such conclusion we have given consideration to the object sought and the public good to be attained by the enactment of such legislation. *Combs, Auditor, et al.* v. *Cook* (1958), 238 Ind. 392, 151 N. E. 2d 144; *Schultz* v. *Graham; Kercheval* (1955), 234 Ind. 243, 126 N. E. 2d 1; See also Sutherland Statutory Construction Vol. 3, §6904. If the legislature has seen reason for such legislation then it is not our duty to expand or restrict it. *State ex rel.* v. *Graham, Trustee* (1953), 231 Ind. 680, 110 N. E. 2d 855.

The question now is where does this legally place the natural child of an adopted adult child if the adopted child predeceases the adopting parents?

Assuming the above rationale is reasonable, it would logically follow that if the adopted adult child is to be given the same rights afforded all adopted children, regardless at what age the adoption took place, with respect to the adopting parent, then the natural child of the deceased adopted child ought to advance to that position formerly held by his parent.

"According to the great weight of authority, if an adopted child dies during the life of its adopting parent, leaving children, such children are for most, if not for all, purposes regarded as *natural* grandchildren of the adopting parent, and are entitled to represent their parent and to receive from the estate of his adopting parent what he would have been entitled to receive had he lived until after such parent's death. . . ." Am. Jur. Vol. 1, §56, p. 656. (Our emphasis.)

It is pointed out by appellant that in the case of wills, an adult child when adopted by the testator is considered the child of the testator, and no other persons are entitled to establish relationship to the testator

through such child. (§6-601 Burns' 1953 Repl. Subsection (d).)

The law of Wills is founded upon entirely different principles. The basis for the distinction between intestate succession and where property flows by preference made by will is too large and complex to discuss here, except to say that in the instant case we are dealing with the estate of a decedent who has made no preference, but instead the preference is made for her as a matter of statutory law.

The law of adoption is foreign to our common law. From the time of its introduction into our system it has suffered in progress. The common law has been zealously guarded in order to limit, and, if not on occasion, to defeat the purpose of adoption. In order to do so the writers have dug deep into antiquity for rules, seeking to deprive adopted children of those rights afforded natural children. The admission of strangers into the family clan has not always been a welcome one. Time after time the intent and purpose of the adopting parent has been defeated by collective kin. However, it is our opinion that the rights and capacity between parent and child, whether created by nature or by law, can be no greater than the hearts that brought about such a union.

Parties making use of adoption statutes do so oftentimes with anticipation that those blank spaces in life, brought about by nature's selfishness, might be filled and the lives of the parties concerned might be lived more normally. Whether the child is adult or minor when adopted should not change the legal rights he attains by that relationship with his adopting parents.

Here, in the instant case the fact that the child was adopted just thirty-nine days before her marriage would

give strong suspicions as to the intent of the parties involved.

This Court feels that it has no right to allow collateral relatives to disturb either the relationship of the adoptive parent to the adopted child or the relationship of the adoptive parent to the adopted child's natural child who, in both a legal and moral sense, should retain all the rights of a natural grandchild. We believe that the act of adoption in itself is affirmative of this stand and that such a union is not to be dissolved upon the death of the adopted child.

Therefore, it is our opinion that the legislature intended that the natural child of an adopted adult child is an heir of the adopting mother in the relation of a grandchild.

By reason of the conclusions which we have reached herein, we are of the opinion that the findings and decision of the lower court are not contrary to law.

Judgment affirmed.

Ryan, P. J., Myer, J., concur.

Cooper, J., concurs in result only.

NOTE.—Reported in 175 N. E. 2d 706.