STATE OF INDIANA ON THE RELATION OF MARTHA LEFFING-WELL, INDIVIDUALLY AND AS CLERK OF THE BLACKFORD CIRCUIT COURT *v.* SUPERIOR COURT No. 2 OF GRANT COUNTY, INDIANA, AND THE HONORABLE THOMAS G. WRIGHT, AS JUDGE THEREOF.

[No. 874S153. Filed December 31, 1974.]

*Bonham and Wilson,* of Hartford City, *Max C. Peterson, Esquire, Peterson, Ervin and Barry,* of Hartford City, for relatrix.

Honorable *Thomas G. Wright,* Grant Superior Court No. 2, for respondent.

### ORIGINAL ACTION

GIVAN, C.J.—Relatrix is the clerk of the Blackford Circuit Court. She has been cited for contempt in the Respondent court for refusing to obey the order of that court requiring her to issue a marriage license. She brings this original action for a permanent writ of prohibition commanding Respondents

to refrain from making any findings, orders or entries in the matter of the contempt against her.

This Court conducted an emergency hearing on August 13, 1974, and granted a temporary writ against the Respondents.

The record presents the following facts: On July 22, 1974, a fifteen year old girl and an eighteen year old boy, both residents of Blackford County, applied to the Blackford County judge, The Honorable Orville A. Pursley, for a waiver of the minimum age requirement for marriage. Judge Pursley denied the application. Subsequently, the couple applied to the Respondent judge for waiver of the minimum age for marriage. The couple informed Respondent judge of their respective ages and stated that the girl was not then pregnant, but had already given birth to a child fathered by the boy. On July 26, 1974, Respondent ordered Relatrix to issue a marriage license to the couple. Relatrix refused to comply with Respondent's order. On July 31, 1974, Respondent ordered Relatrix to appear in the Grant Superior Court to show cause why she should not be held in contempt of court for disobeying the order.

It has long been the law in Indiana that a person cannot be held in contempt of court for failure to obey an order if the issuing court had no jurisdiction to give the order. See *Hofmann* v. *State* (1935), 207 Ind. 695, 194 N.E. 331. See also 17 AM. JUR. 2d, *Contempt*, § 42.

The entry made by the Respondent court reads in part as follows:

"Comes now the Court, and shows that on the 26th day of July, 1974, Cheryl Brown and Joseph Crouse, *each residents of Blackford County, Indiana,* appeared before this Court and orally petitioned that an order be issued that a marriage license be issued to them. That each of said petitioners testified that they had been denied permission by the Honorable Orville A. Pursley, Judge of the Blackford Circuit Court, and were making application for an order pursuant to IC 31-1-1-4. That on said date, this

Court issued an order to the Clerk of the Blackford Circuit Court, which order appears in the following words and figures, to-wit: . . ." (Emphasis added.)

As above indicated, the Respondent court specifically found that both of the parties were residents of Blackford County. The statute regarding the minimum age for marriage reads as follows:

"(a) A male who has reached his seventeenth [17th] birthday may marry a female who has reached her seventeenth [17th] birthday, subject to the parental consent required by section 4[31-1-1-4] of this chapter unless:

"(1) the male and female are more closely related than second cousins; or

"(2) the male or female has a husband or wife living.

"(b) If proof is submitted to a judge of a circuit, superior or juvenile court of the county of residence of either applicant establishing the fact that the female is pregnant, the judge may authorize the clerk of the circuit court to issue a marriage license to the pregnant female and the putative father provided the female is at least fifteen [15] years of age, if:

"(1) the putative father and the pregnant female indicate to the judge that they desire to marry; and

"(2) the persons required in section four [31-1-1-4] of this chapter give consent to the marriage of under-age applicants.

"(c) A judge's authorization granted pursuant to subsection (b) of this section will be part of the confidential files of the clerk of the circuit court and can be inspected only by written permission of a judge of the circuit, superior or juvenile court. [1 R.S. 1852, ch. 67, § 1, p. 361; Acts 1877, ch. 53, § 1, p. 94; 1957, ch. 255, § 1, p. 585; 1974, P.L. 131, § 1, p. —.]" IC 31-1-1-1 (Burn's Code Ed., 1974 Supp.)

The statute regarding parental consent reads as follows:

"(a) In the event an applicant for a license to marry is under eighteen [18] years of age, the license cannot be issued unless the application for the license is accompanied by a verified written consent, consenting to the issuance of the license to any such under-age applicant, signed and verified in the presence of the issuing officer by one of the following:

"(1) Both parents, either natural or adoptive, of any such applicant; or

"(2) The legally appointed guardian of any such applicant; or

"(3) One parent, in the event the legal custody of any such applicant has been awarded to the consenting parent by a judicial decree; or one parent, in the event the other parent is deceased, has abandoned any such applicant, is physically or mentally incompetent to furnish the required written consent, or the whereabouts of the other parent is unknown: Provided, That the written consent contains a verified statement of fact which renders the consent of the other parent unnecessary.

"Before an applicant [application] for a license to marry may be received by a clerk of a circuit court, any required written consent, presented by an applicant, shall be filed of record in the office of the clerk, and the notice of the filing thereof shall be entered on the marriage license docket.

"(b) Parties intending to marry who require parental or guardian's consent in order to obtain a license to marry, may petition, either orally or by a written petition, the judge of the circuit court, or the judge of a superior court, of the county in which either or both of the parties reside, or of a county immediately adjoining such county, for a judicial decree authorizing the dispensation of the required consent. In the consideration of any petition so filed, the judge of such court may conduct any investigation or hold any hearing that he may deem necessary to a proper determination of the petition. After due consideration of the pertinent facts relevant to the matter presented by the petition, the judge of such court may, for good and sufficient reason shown and in the best interests and welfare of all persons concerned, issue a written order, directed to the clerk of the circuit court, authorizing and directing such clerk to issue a marriage license to the petitioners without requiring the submission of any required written consent." IC 31-1-1-4 (Burn's Code Ed., 1974 Supp.)

From the facts in this case, it is clear that Respondent court erred in the statement that the parties were making application in his court pursuant to IC 31-1-1-4. They were in fact making application under 31-1-1-1 for the reason that the girl had not yet reached her seventeenth birthday. Therefore, it was necessary that she come within the exceptions stated in 31-1-1-1.

A reading of the two statutes involved leads this Court to the conclusion that parties who have reached their seventeenth birthday, but have not yet reached their eighteenth birthday, may apply for a marriage license in either the county of the residence of one of them, or in an adjoining county. However, if the female is under seventeen, but is at least fifteen years of age, the application must be made in the county of the residence of either party, and it must be established that the female is pregnant before the license will issue.

Although the Respondent judge in his order recited that each of the parties was a resident of Blackford County, he states in his response in this cause that the girl was a resident of Grant County because of the fact that she was "living with her grandmother in Grant County, Indiana." However, the record shows that at the time she was in legal custody of her mother, who lived in Blackford County. The resident of an unemancipated child is that of his parents. 11 I.L.E., *Domicile* § 3.

Even if we would assume for the sake of argument that the girl was a resident of Grant County at the time of the application, the fact that she was not pregnant at the time of the application removes her from the stated exceptions of the statute. It is argued that the word "pregnant" in the statute should be interpreted to include a mother with a child already born. Pregnancy is defined in BLACK'S LAW DICTIONARY (4th Ed.) at 1342:

> "In medical jurisprudence. The state of a female who has within her ovary or womb a fecundated germ. Dungl. Med. Dict. The existence of the condition beginning at the moment of conception and terminating with delivery of the child. State v. Loomis, 90 N. J. Law, 216, 100 A. 160, 161.

The legislative intent in this statute is clear. This Court is not at liberty to interpret the word "pregnant" to include a mother of a child already born. It is within the exclusive province of the legislature to establish pub-

lic policy as to who may marry, the age at which they may marry and the procedure to be followed. *Sweigart* v. *State* (1938), 213 Ind. 157, 12 N.E.2d 134. This Court will not invade the legislative prerogative.

For the foregoing reasons, this Court holds that the Respondent had no jurisdiction to issue the order to Relatrix that she issue a marriage license to the parties. The temporary writ heretofore issued is now made permanent and Respondent court is mandated to dismiss the charge of contempt against the Relatrix.

Arterburn, DeBruler, Hunter, Prentice, JJ., concur.

NOTE.—Reported at 321 N.E.2d 568.