LUTHERAN HOSPITAL OF FORT WAYNE, INC.; Parkview Memorial Hospital, Inc. of Fort Wayne, Indiana; St. Joseph's Hospital, Inc. of Fort Wayne, Indiana, Appellants (Plaintiffs Below),

v.

DEPARTMENT OF PUBLIC WELFARE OF ALLEN COUNTY, Indiana, Appellee (Defendant Below).

No. 3-776A178.

Court of Appeals of Indiana, Third District.

Dec. 6, 1979.

Rehearing Denied Jan. 14, 1980.

Paul C. Raver, Sr., Richard D. Robinson, Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, for appellants.

Philip H. Larmore, Adair, Perry, Beers, Mallers, Scott & Larmore, David A. Stewart, Miller & Stewart, Fort Wayne, for appellee.

HOFFMAN, Judge.

This is an appeal from a judgment of the trial court declaring that three Fort Wayne hospitals are entitled to reimbursement from the Allen County Department of Public Welfare (Department) for emergency medical treatment rendered to indigents suffering from alcoholism, drug addiction or emotional illness but not for services associated with normal pregnancies.

On July 8, 1975, an action for a declaratory judgment was filed in Allen Superior Court by Lutheran Hospital, Inc.; Parkview Memorial Hospital, Inc.; and St. Joseph's Hospital, Inc. (collectively referred to

as "Hospitals") requesting a declaration of their rights with respect to IC 1971, 12–5–1–1 through 12–5–1–17 (Burns Code Ed.) hereinafter referred to as the "Hospital Commitment Act." Specifically, Hospitals petitioned for a determination that the Department was responsible under the act for paying the necessary medical, surgical and hospital expenses incurred in the emergency treatment of indigents suffering from the following disorders:

"(a) Persons afflicted by ills associated with the ingestion of alcoholic beverages;

(b) Persons suffering from mental illness and depression and emotionally related illnesses;

(c) Persons afflicted by ills associated with the use of narcotic drugs as well as all and any drugs taken in excess; and

(d) Persons who are pregnant and in need of hospital care for the delivery of children or other hospital care associated with pregnancy."

On December 8, 1975, the court entered judgment as follows:

"1. That the plaintiff hospitals are corporations organized pursuant to the laws of the State of Indiana and that said plaintiff hospitals are not conducted for profit.

2. That the plaintiff hospitals are open to the public without discrimination of race, color, or religious belief.

3. That the plaintiff hospitals are 'public hospitals' within the meaning of I.C. 12–5–1–1 et seq.

4. That the Allen County Department of Public Welfare of Allen County, Indiana, has a Hospital Commitment Program adopted pursuant to I.C. 12–5–1–1 through 12–5–1–17 and that the said Program commenced on January 1, 1975 at which time the said Department had a duty to accept application and make investigation pursuant to the said statutes in regards to the following three categories of illnesses which are included

within 'diseases, defects or deformities' as set forth in the aforementioned statutes:

a. Those persons afflicted by ills associated with the ingestion of alcoholic beverages;

b. Those persons suffering from mental illness and depression and emotionally related illnesses;

c. Those persons afflicted by ills associated with the use of narcotic drugs as well as all and any drugs taken in excess.

5. That the aforementioned statutes require the said Department to accept application in the aforementioned three categories and to make investigation as to financial eligibility and further that the said Department should pay for the treatment rendered if the said person or persons are otherwise financially eligible.

6. That the aforementioned three excluded categories all fall within the definition of I.C. 12–5–1–1, et seq. and are either a 'disease', 'defect', or 'deformity'."

The sole issue posed by Hospitals' appeal is whether the trial court erred in excluding the emergency treatment of indigents for normal pregnancies from the coverage of the Hospital Commitment Act. In its cross-appeal, the Department has interposed these objections to the trial court's ruling:

(1) whether responsibility for the payment of hospital care rendered to indigents is that of the township trustee or the Department;

(2) whether responsibility for the payment of hospital care rendered to indigents suffering from alcoholism, drug addiction or mental illness is that of the Indiana Department of Mental Health;

(3) whether Hospitals are "public hospitals" within the meaning of the Hospital Commitment Act;

(4) whether the Hospital Commitment Act is unconstitutional;

(5) whether Hospitals have standing to bring this suit;

(6) whether Hospitals failed to join indispensable parties;

(7) whether the trial court erred in granting a motion for involuntary dismissal tendered by the Indiana State Department of Public Welfare;

(8) whether the trial court erred in finding that alcoholism, drug addiction and mental illness were included within the terms "disease, defect or deformity" because no competent medical evidence was introduced to support that finding; and

(9) whether the trial court erred in failing to specify within which of the terms "disease, defect or deformity" the categories of alcoholism, drug addiction and mental illness fall.

Hospitals' only contention is that the trial court erred in excluding emergency treatment for normal pregnancies from the scope of the Hospital Commitment Act. IC 1971, 12–5–1–1 provides generally that the Department is empowered to commit to certain hospitals any indigent who appears to be suffering from a disease, defect or deformity which may be benefited by treatment in those hospitals. IC 1971, 12–5–1–15 contains an emergency admissions procedure applicable to the act.

Hospitals suggest that the clause "disease, defect or deformity which may be benefited by treatment" should be broadly construed in order to encompass normal pregnancies. Several recognized principles of statutory construction offer guidance in resolving this controversy. Paramount among these rules is to ascertain the intent of the Legislature. State v. Gilbert (1966), 247 Ind. 544, 219 N.E.2d 892. Moreover, unnecessary strain should not be placed on words in order to give effect to the interpreter's preconceived meaning. Specific words in a statute ought not to be enlarged when it is apparent that they were not intended to be given such construction. Adams et al. v. Slater, Administrator etc. (1961), 132 Ind.App. 105, 175 N.E.2d 706.

Further, where the terms are not technical in nature, they should be interpreted according to their plain and ordinary meaning. *Bowen v. Review Bd. of Ind. Emp. Sec. Div.* (1977), Ind.App., 362 N.E.2d 1178.

■ Considering these terms in their plain and ordinary meaning, a reasonable approach dictates that treatment for normal pregnancies is not within the scope of the Hospital Commitment Act. The following definitions extracted from Black's Law Dictionary (4th ed. 1968) provide a useful summary of the meaning of these words:

"DISEASE. Deviation from the healthy or normal condition of any of the functions or tissues of the body; an alteration in the state of the body or of some of its organs, interrupting or disturbing the performance of the vital functions, and causing or threatening pain and weakness; illness; sickness; disorder; malady, bodily infirmity.

"DEFECT. The want or absence of some legal requisite; deficiency; imperfection; insufficiency . . . . The want or absence of something necessary for completeness or perfection; a lack or absence of something essential to completeness; a deficiency in something essential to the proper use for the purpose for which a thing is to be used.

"DEFORMITY. A deformed or misshapen condition; an unnatural growth, or a distorted or misshapen part or member; disfigurement; as a bodily deformity."

Pregnancy is the existence of the condition beginning at the moment of conception and terminating with delivery of the child. *State ex rel. Leffingwell v. Grant Sup. Ct. 2* (1974), 262 Ind. 574, 321 N.E.2d 568. Additionally, the consensus of judicial opinion in this country indicates that pregnancy is a normal physiological function of women. *Banti v. State* (1956), 163 Tex.Cr. 89, 289 S.W.2d 244; *Newmon v. Delta Air Lines, Inc.* (N.D.Ga.1973), 374 F.Supp. 238; *Crees v. California State Board of Medical Exam.* (1963), 213 Cal. App.2d 195, 28 Cal.Rptr. 621; *Rasicot v. Royal Neighbors of America* (1910), 18 Idaho 85, 108 P. 1048; *Commonwealth v. Porn*

(1907), 196 Mass. 326, 82 N.E. 31; *Lee v. Metropolitan Life Ins. Co.* (1936), 180 S.C. 475, 186 S.E. 376.

Thus, it is evident that a normal pregnancy does not fall within the rubrics of "disease, defect or deformity". To hold otherwise would place an unreasonable strain upon the language of the statute.

■ In an effort to obviate this conclusion, Hospitals maintain that the Hospital Commitment Act evinces a clear legislative purpose to provide a broad and comprehensive scheme for rendering medical assistance to all indigents. It is argued that the 1974 amendment to IC 1971, 12–5–1–1 shifted the responsibility for indigent medical care from the township trustee to the county department of public welfare. Contrary to this assertion, the 1974 amendment did not fully supplant the township trustee's duty to provide medical assistance to the poor. Prior to 1974, the Department was permitted but not required to commit indigents "suffering from a disease, defect or deformity, which may be benefited by treatment" under the act. With the 1974 enactment, the Department's responsibility became mandatory.

Unless an indigent can meet the statutory criteria of "disease, defect or deformity which may be benefited by treatment", the Department is not mandated to commit him or pay for his care. If the General Assembly had intended to shift all indigent medical care to the Department, it could easily have done so. Instead, the Legislature only carved out certain types of infirmities that the Department would be responsible for. This legislative intent is further substantiated by IC 1971, 12–5–1–15 of the act which provides in part:

"When any person is committed on an emergency basis subject to the later determination of eligibility, the necessary investigation, determination of eligibility or ineligibility, and notification of hospital authorities of such determination, shall be made promptly. If ineligible, the hospital authorities shall make collection directly from the patient or persons re-

sponsible for him or from other resources available to him or *from other responsible public authorities.*" (Emphasis added.)

Clearly, the Legislature contemplated situations where the Department would not be responsible for indigent medical care.

■ The Department alleges that the Indiana Department of Mental Health (Mental Health) is responsible for the treatment of indigents suffering from drug addiction, alcoholism and emotional illness pursuant to IC 1971, 16–13–6.1–1 through 16–13–6.1–34 (1978 Burns Supp.). Those statutes created a single division of addiction services within Mental Health to provide, *inter alia,* for the treatment of alcoholics and drug addicts. None of the admission procedures in those statutes though are applicable to the emergency treatment of indigents under the facts in the instant case.

Next the Department urges that Hospitals cannot be classified as "public hospitals" within the meaning of IC 1971, 12–5–1–11 because they realize substantial excess revenues from their operations and because they are ultimately controlled by their respective religious affiliations. The statute in question provides:

"The term 'public hospitals' as herein designated, shall, for the purpose of this act 12–5–1–1—12–5–1–17 be taken to mean county and city hospitals or hospitals *which are not conducted for profit* and which are open to the public without discrimination of race, color or religious belief. The term medical, surgical or hospital care shall include in-patient and out-patient service." (Emphasis added.)

■ Nowhere in the Hospital Commitment Act is the expression "not conducted for profit" defined. Nonetheless, two other statutes have construed words of similar import. Though not conclusive, a legislative construction of the meaning of certain words in one act is entitled to consideration in construing the same words in another act. *Ralston v. Ryan* (1940), 217 Ind. 482, 29 N.E.2d 202. In IC 1971, 16–1–8–1(4) (Burns Code Ed.) a "nonprofit hospital" was defined as "any hospital owned and operated by a corporation or association, no part

of the net earnings of which inures, or may lawfully inure, to the benefit of any private shareholder or individual." And in the Indiana Not-for-Profit Corporation Act of 1971, IC 1971, 23–7–1.1–2(d) (Burns Code Ed.), the term "not-for-profit" was defined as

"any corporation which does not engage in any activities for the profit of its members and which is organized and conducts its affairs for purposes other than the pecuniary gain of its members.

"The term 'not-for-profit' as used in this chapter also shall include but not be limited to any religious, civil, social, educational, fraternal, charitable or cemetery association organized or reorganized under this chapter which does not engage in any activities for the profit of its trustees, directors, incorporators, or members."

■ It seems apparent that the Legislature intended to define "hospitals not conducted for profit" as those in which none of the excess revenues are distributed to any private individuals or shareholders. This is consonant with the legislative intent evinced in the two aforementioned statutes. Moreover, to accept the Department's assertion that Hospitals are excluded from the purview of the act insofar as they derive excess revenues from their operations would mean that Hospitals would have to be insolvent or operate at a loss in order to qualify as public hospitals. The Legislature cannot be presumed to have intended such an absurd result.

The evidence adduced at trial revealed that none of the Hospitals had any shares outstanding and that all excess revenues were credited to their respective capital improvement funds. Furthermore, Hospitals were incorporated under the laws of Indiana as not-for-profit corporations. This evidence was sufficient to establish that Hospitals were not conducted for profit.

*Wayne Twp. v. Lutheran Hosp.* (1974), 160 Ind.App. 427, 312 N.E.2d 120, cited by the Department for the proposition that Hospitals are not public hospitals, is inappo-

site since neither the stipulated findings of fact nor the record there disclosed whether Lutheran Hospital was a public hospital. By contrast, the evidence here clearly showed the "non-profit" status of appellant Hospitals. Additionally, the *Wayne Township* court merely held that Lutheran Hospital was not a public hospital within the provisions of IC 1971, 16–12–1–3 through 16–12.1–7–2 (Burns Code Ed.). Those statutes pertain only to county hospitals.

■ The Department also insists that Hospitals are not "open to the public without discrimination of race, color or religious belief" because their governing bodies are ultimately controlled by their respective religious affiliations. This contention is patently specious. Uncontroverted testimony showed that none of the Hospitals discriminated on the basis of race, color or religious belief in their admission policies.

■ The Department next contends that the Hospital Commitment Act is unconstitutionally vague and also violates the prohibition against local or special laws. An examination of the record discloses that at no time in the pleadings or proof at trial were these constitutional issues addressed. The only mention of these alleged constitutional deficiencies appears in the Department's motion to correct errors. Questions regarding the constitutionality of a statute must be raised in the trial court before the filing of the motion to correct errors. *Linville v. Plan Commission* (1972), 258 Ind. 467, 281 N.E.2d 884; *Wardship of Bender* (1976), Ind.App., 352 N.E.2d 797. Therefore, these arguments have not been preserved for consideration.

The Department also assails the constitutionality of the Hospital Commitment Act on the grounds that application of the statute contravenes both the Establishment Clause of the U.S. Constitution and Article 1, Section 6 of the Indiana Constitution in view of the predominately religious nature of Hospitals. A threshold question advanced by Hospitals is whether the Department lacks standing to raise this issue inasmuch as it is a county agency. In *City of Indpls: et al. v. State Tax Comm'rs et al.*

(1974), 261 Ind. 635, 308 N.E.2d 868, the Supreme Court described the general nature of Indiana's standing rules as follows:

"For the disposition of cases and controversies, the Court requires adverse parties before it. Standing focuses generally upon the question of whether the complaining party is the proper person to invoke the Court's power. However, more fundamentally, standing is a restraint upon this Court's exercise of its jurisdiction in that we cannot proceed where there is no demonstrable injury to the complainant before us."

■ Thus, the standing rules of Indiana are stated in terms of requiring a party to demonstrate injury. *Bd. Comm'rs v. Kokomo City Plan Comm.* (1975), 263 Ind. 282, 330 N.E.2d 92. Under the U.S. Constitution, the gist of the standing question is whether a party has alleged such a personal stake in the outcome of the litigation as to assure that concrete adverseness which sharpens the presentation of issues upon which a court so largely depends for illumination of difficult constitutional questions. *Baker v. Carr* (1962), 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663. Furthermore, a party must show that it is injured by the challenged action. *Arlington Heights v. Metropolitan Housing Corp.* (1977), 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450.

■ In the case at bar, the Department has neglected to allege any injury, much less specify what injury it actually suffered. Moreover the county, through its agencies like the Department, has no sovereign powers to assert the rights of its residents. "A state may act as *parens patriae* on behalf of its citizens. *Hawaii v. Standard Oil Co. of California* (1972), 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184; *Missouri v. Illinois* (1900), 180 U.S. 208, 21 S.Ct. 331, 45 L.Ed. 497. However, a county has no sovereign powers and cannot act as *parens patriae*, asserting the claims of its residents. Since the constitutional provisions have not been construed to assure a county, as a governmental entity, rights equal to those granted other counties, and

since a county has not been recognized as a sovereign which may protect its citizens, we find that the County has no standing to raise the issue of the constitutionality of this statute." *Bd. Comm'rs v. Kokomo City Plan Comm., supra,* 330 N.E.2d at 101.

■ Insofar as there is nothing of record tending to show that the Department has suffered any injury, it lacks the requisite standing to raise this constitutional argument.

The Department also submits that Hospitals lack standing to raise the issues presented in this suit. It claims that only resident indigents of Allen County who have been denied payment under the Hospital Commitment program may invoke the jurisdiction of the trial court for a declaratory judgment.

To bring a declaratory judgment action, Hospitals must meet the criteria set forth in IC 1971, 34–4–10–2 (Burns Code Ed.):

"Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question or construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."

■ Moreover, Hospitals must demonstrate a substantial present interest in the relief sought and that a question has arisen affecting their rights which ought to be decided in order to safeguard such rights. *Zoercher v. Agler* (1930), 202 Ind. 214, 172 N.E. 186. Thus, Hospitals must show that their rights are directly affected by the Department's policy of denying payment for medical treatment of indigents in the four excluded categories.

The evidence at trial indicated that the combined expenditures incurred by Hospitals for the treatment of these four groups of indigents approximated $450,000. If these indigents are eligible for medical assistance under the Hospital Commitment Act, then Hospitals are entitled to reimbursement from the Department for their substantial expenses incurred in treating them. See IC 1971, 12–5–1–15. Accordingly, Hospitals have a substantial present interest in the relief sought which ought to be decided in order to safeguard their rights.

The Department also assigns as error the trial court's granting of a motion for involuntary dismissal tendered by third-party defendant, the State Department of Public Welfare of Indiana (State Department). The Department had filed a third-party complaint alleging that the State Department had an interest in the outcome of the litigation because a ruling against the Department might necessitate amendments to the rules and regulations of the State Department and an increase in administrative funding to the Department from the State Department. Thus the State Department might be liable in part to the Department in the event the Hospitals prevailed at trial.

■ Indiana Rules of Procedure, Trial Rule 41(B) provides in part:

"After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that considering all the evidence and reasonable inferences therefrom in favor of the party to whom the motion is directed, to be true, there is no substantial evidence of probative value to sustain the material allegations of the party against whom the motion is directed."

The language of this rule requires the trial court to consider only the evidence and inferences most favorable to the non-moving party in ruling on such a motion. Therefore, on appeal it must be determined whether there was evidence introduced which would have been sufficient to support the Department's third-party complaint. *Building Systems, Inc. v. Rochester Metal Prod., Inc.* (1976), Ind.App., 340 N.E.2d 791.

However, the Department has not demonstrated in its brief the parts of the record it relies upon to fortify its argument as required by Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). A reviewing court is not required to search the record for error. Consequently, any alleged error is waived.

The Department maintains that the trial court should have dismissed this suit because Hospitals failed to join the trustees of all the civil townships in Allen County and the Indiana Department of Mental Health as indispensable parties, citing Ind. Rules of Procedure, Trial Rule 19(A)(1). That rule provides in part:

> "A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties."

Implicit in this argument is the erroneous assumption that the only remedy for failure to include all parties necessary for a just adjudication is dismissal of the suit. However, with but one exception not applicable here, an action need not be dismissed merely because an indispensable party was not named. TR. 19(B); 2 Harvey, Indiana Practice, Civil Code Study Commission Comments at 247 (1970).

Indeed, where an indispensable party is not named the correct procedure calls for an order in the court's discretion that he be made a party to the action or that the action should continue without him. To the extent that the Department believed the township trustees or the Indiana Department of Mental Health were indispensable parties, it could have joined them pursuant to Ind. Rules of Procedure, Trial Rules 14(A)(2) and 20(A)(2) as it did with respect to the State Department. There was no error.

The Department further claims that the trial court erred in concluding that the categories of alcoholism, drug addiction and mental illness were within the meaning of the "technical" terms "disease, defect or deformity" when there was no medical evidence introduced to support this finding. Aside from this bare assertion, the Department has not indicated why these terms should be considered technical ones. Ordinarily, these words are to be understood in their plain and usual meaning. *Railway Mail Assn. v. Schrader* (1939), 107 Ind.App. 235, 19 N.E.2d 887; 75 A.L.R.2d 1238 (1961). Additionally, the meaning of a word, in the absence of a technical definition, should not be controlled as against its general and commonly accepted meaning by testimony as to what witnesses understood thereby. *Pennsylvania Co. v. Mosher* (1911), 47 Ind. App. 556, 94 N.E. 1033. For these reasons there was no need to introduce extrinsic evidence to determine the legislative intent.

Lastly, the Department maintains the trial court erred by failing to specify within which of the terms "disease, defect or deformity" the categories of alcoholism, drug addiction and mental illness fell. Again, the Department makes a bald statement unsupported by any cogent argument or authority. Pursuant to Ind. Rules of Procedure, Appellate Rule 8.3(A)(7), the issue is deemed waived.

Also it is difficult to imagine how the Department was prejudiced by this purported omission. Indeed, the three categories may well cut across more than one of the terms in question. In any event, the trial court's judgment clearly recognized the Department's responsibility for the emergency treatment of indigents in these three categories. When an indigent is suffering from a form of mental illness for example and is otherwise entitled to the benefits of the Hospital Commitment Act, it cannot matter in the least whether his affliction is characterized as a "disease" as opposed to a "defect" or a "deformity". He is nonetheless covered by the act.

No reversible error having been shown, the judgment of the trial court is affirmed.

Affirmed.

STATON, J., concurs.

GARRARD, P. J., concurs in result.